## JAMES A. WHITCOMB, APPELLANT, v. R. RUSSELL BRANT, RESPONDENT.

Argued November 28, 1916—Decided March 5, 1917.

The plaintiff leased certain premises, in the city of Newark from defendant, and having occupied under the lease for a period, attempted to induce the landlord to accept a surrender of the same, which the latter declined to do. The plaintiff then abandoned the premises, and the landlord after an interim of two months, during which the premises remained unoccupied, rented them for a period of years, at an increased rent. The plaintiff basing his complaint on the doctrine of *assumpsit*, instituted suit for the recovery of the excess rent from the landlord; the complaint on motion was stricken out, as not alleging a valid cause of action. *Held*, that since the plaintiff had abandoned the premises, he could claim no interest, either upon the theory of privity of estate or privity of contract, above the amount of rent for which he was obligated under his covenant. *Held, further,* that since the doctrine of *assumpsit* is based upon an implied promise invoked by the law, upon equitable considerations, it can lend no support to a claim by one who while he repudiates his express covenant, seeks at the same time to invoke it as a basis for a claim to incidental profit.

---

On appeal from an order striking out complaint at Essex Circuit.

For the appellant, *William L. Brunyate* and *Joseph M. Gazzam* (of the New York bar).

For the respondent, *Lum, Tamblyn & Colyer.*

The opinion of the court was delivered by

MINTURN, J. The complaint in this case was stricken out at the Circuit, and from that order this appeal has been taken. The situation presented is as though a demurrer under the former practice had been interposed to the declaration.

The complaint alleges that about April 10th, 1906, the plaintiff entered into a written lease under seal, for a term of years, with defendant, as owner of certain premises in the city of Newark, at the annual rental of $2,400, payable in equal monthly installments. In April, 1912, the plaintiff notified defendant that he had no further use for the premises, and plaintiff then procured one Forster to enter as sub-lessee, at the same rent for the remainder of the term. Defendant refused to allow Forster to enter, and plaintiff then offered to surrender the premises, and induce Forster to enter as defendant's tenant, which offer defendant also refused.

In May, 1912, the plaintiff ceased to occupy the premises, and offered to surrender same, but this also the defendant refused.

The lease contained this covenant:

"If the said premises shall become vacant or be deserted during the said term, said party of the second part (Whitcomb, the tenant) does hereby authorize the said party of the first part (Brant, the landlord), his heirs. assigns, agents or attorneys, to re-enter the same, at his or their option, and re-let them, and receive and apply the rent so received to the payment of the rent due by these presents."

For about two months the premises remained unoccupied, but on July 5th, 1912, the defendant let the same to Forster for a term of years, expiring on May 1st, 1915, at an annual rent of $2,700, payable in monthly installments of $225, being an increase of $300 annually over the former lease.

The plaintiff conceiving that this increased rental was his property instituted this suit to recover it.

The concrete question thus presented is whether, upon such a state of facts, an action in *assumpsit* can be maintained. The theory upon which it is sought to be maintained is that the plaintiff's estate as a tenant was never terminated, and, in the language of the complaint, "the estate of the plaintiff" during all of this time "was still outstanding and in existence." Upon this conception of liability, the plaintiff's complaint has been framed, and the common law notion of an *assumpsit* for money had and received to the plaintiff's use is thereby invoked, as the legal theory upon which the validity of the complaint must be determined.

That there was no conventual surrender of the demised premises is manifest from the attitude of the parties, and the inaction of the defendant; that there was no constructive surrender by operation of law is equally manifest, when it is recalled that such a surrender can be evolved from the acts of the parties only when the intent to accept a proffered surrender is made reasonably clear and unequivocal, or is the logical and necessary result of the landlord's conduct. *Meeker* v. *Spaulsbury*, 66 *N. J. L.* 60; *Payne* v. *Hall*, 82 *Id.* 362; *Smith* v. *Hunt*, 32 *R. I.* 326; 25 *Am. Cas.* 971; *Dennis* v. *Miller*, 68 *N. J. L.* 320; *Jones* v. *Rushmore*, 67 *Id.* 157.

That the element of privity of estate which enters into the completed legal relationship of landlord and tenant, was divested by the plaintiff's conduct in "ceasing to occupy," or, in the language of the trial court, "abandoning" the premises, becomes manifest. *Hunt* v. *Gardner*, 39 *N. J. L.* 530; *Ghegan* v. *Young*, 23 *Pa. St.* 18; 2 *Bour.* 758; 24 *Cyc.* 877.

The second paragraph of the complaint alleges that the plaintiff "having no further use for said premises so notified the defendant," and the third paragraph alleges that "the plaintiff ceased to occupy said premises and tendered to the defendant a surrender of his estate therein."

The failure of the defendant to accept the plaintiff's offer is of importance only upon the inquiry whether there was in fact a conventual surrender, or one implied by operation of

law; but upon the question of abandonment, these allegations of the complaint are material as an admission evidencing the plaintiff's own mind and individual status, with regard to the *locus in quo;* and we conceive that these admissions establish the plaintiff's status as a tenant, who had abandoned the demised premises, without the consent of the landlord, thereby severing the common law relationship of privity of estate, without terminating the privity of contract which still imposed upon the plaintiff the obligation to pay rent under the covenant in the lease. *Hunt* v. *Gardner, supra; Creveling* v. *DeHart,* 54 *N. J. L.* 338; 24 *Cyc.* 1164, and cases cited.

In this situation the landlord had a legal right to enter under the privilege accorded him by the express terms of the lease; or under his common law right as landlord for the protection of the demised premises. Upon this principle a landlord is not upon the abandonment of the demised premises required to relet for the protection of the tenant.

Where the landlord enters under a provision in the lease, such as is here presented, the liability to pay rent as such is based upon the terms of the covenant, and does not arise out of the privity of estate incident to the relationship of landlord and tenant, which is thereby terminated. *Hunt* y. *Gardner, supra; Teller* v. *Boyle,* 132 *Pa. St.* 56; 18 *Atl. Rep.* 1069; *Vogel* v. *Piper,* 89 *N. Y. Supp.* 431; 24 *Cyc.* 1165.

We have, therefore, the situation of a tenant who has violated his covenant by abandoning the demised premises, and failing to pay rent, upon which after an interim of two months, the landlord entered and relet the premises, and is thereupon met by a demand from the tenant for the increased monthly installment of rent which the new letting yields, during the term of the former lease.

This demand, confessedly, cannot rest upon contract, because none exists, unless one can be implied, as the plaintiff conceives, upon the doctrine underlying the common law action of *assumpsit* for money had and received. But quite manifestly that doctrine was based upon an equitable consideration, superimposed upon a pure legal or moral duty, as where money had been paid under mistake or duress, or where a con-

sideration had failed, from which equitable consideration the law *ex debito justitiæ* raised an implied promise, and, in the absence of a suitable original writ, conceded an action on the case as a remedy. *Bonnell* v. *Foulke, 2 Sid.* 4; 2 *Harv. L. Rev.* 66; 2 *R. C. L.* 746, and cases; 3 *Streets Found. Leg. Liab.* 190; 5 *C. J.* 1381, and cases.

Lord Mansfield, in *Moses* v. *Macferlan, 2 Burr.* 1005, concisely defined its nature as a "kind of equitable action, to recover back money, which ought not in justice to be kept. * * * It lies only for money which, *ex æquo et bono*, the defendant ought to refund. * * * In one word, the gist of this kind of action, is that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."

It is manifestly inconceivable that a right of action, based as was this, in its inception upon the construction of a legal fiction to support it, could be made applicable to any claim excepting one arising *in fore conscientiæ;* for, as Blackstone says, "No fiction shall extend to work an injury; its proper operation being to prevent a mischief, or remedy an inconvenience which might result from the general rule of law." 3 *Bl. Com.* 43.

In *Lloyd* v. *Hough,* 1 *How.* (*U. S.*) 153, Mr. Justice Daniel observed: "The very term *assumpsit* presupposes a contract. Whatever, then, excludes all idea of a contract, excludes, at the same time, a remedy which can spring from contract only."

The development of modern contract law has evolved from these fundamental principles a distinct department of jurisprudence under the designation of *"quasi-*contracts," to the elucidation of which the learned efforts of an eminent legal tutor has given deserved prominence.

It is therein observed that "the real reason why a plaintiff who is in default under a contract cannot recover money paid thereunder, is that it is because of his default that he has not received from the defendant the subject-matter of the contract." *Law of Quasi Cont. (Prof. Keener)* 230.

The Massachusetts Supreme Court, in *Stark* v. *Lincoln,* 2 *Pick.* 267, elucidates the general principle with these observations: "Courts of justice are eminently characterized by their obligation and office to enforce the performance of contracts, and to withhold aid and countenance from those who seek, through their instrumentality, impunity or excuse for the violation of them. And it is no less repugnant to the well-established rules of civil jurisprudence, than to the dictates of moral sense, that a party who deliberately and understandingly enters into an engagement and voluntarily breaks it, should be permitted to make that very engagement the foundation of a claim to compensation for services under it."

The same doctrine was applied in *Haslack* v. *Mayers,* 26 *N. J. L.* 284; *Fry* v. *Miles,* 71 *Id.* 293; *West Shore Railroad* v. *Wenner,* 75 *Id.* 494, and in New York in *Peoples Bank* v. *Mitchell,* 73 *N. Y.* 406.

*Volenti non fit injuria* supplies the basic maxim upon which this superstructure of the law has been constructed, as it does in the ordinary delictual actions where the conduct of the actor presents a complete answer to the suit as an estoppel *in pais.*

Its application results in denying a remedy to one whose voluntary conduct, tantamount to a consent, has resulted in his own loss or injury.

It is "a general rule of the English law," says Lord Tindall in *Gould* v. *Oliver,* 4 *B. N. C.* 134, " that no one can maintain an action for a wrong, where he has consented to or contributed to the act which occasions his loss."

The same principle was applied in *Byam* v. *Bullard,* 1 *Curt.* (*U. S.*) 101, and in *Caswell* v. *Worth,* 5 *E. & B.* 849.

Remembering that the action of *assumpsit* had its origin in a conception of tort liability, primarily based upon the element of deceit, by which one attempted to enrich himself at the expense of another (2 *Harv. L. Rev.* 64) from which *ex debito justitiæ* an implied promise was evolved, the propriety of the applicability of the maxim in this instance becomes apparent; and its application becomes conspicuously apparent, when it is recalled that so far as the plaintiff could do so, he

endeavored by act and word to surrender and evade every semblance of his contractual obligation; and in fact abandoned the *locus in quo,* for the purpose of being relieved from all responsibilities and obligations under his covenant.

The conduct of the defendant in acting as he did upon this declared abandonment, incidentally resulted in having the rent received, applied *pro tanto* to benefit the plaintiff, and to relieve him to that extent under the obligation of the covenant.

To that extent the doctrine of *assumpsit* which he invokes indemnified him and finds recognition in the adjudications. *Alsup* v. *Banks,* 13 *L. R. A.* 598, and notes.

In so far as the plaintiff's rights under the contract are concerned, they were at an end, so far as he could produce that result, when he abandoned the premises and defaulted in the performance of his covenants.

His privity of estate was terminated by his own act, so that no implied promise can be said *ex debito justitiæ* to arise from its existence. To concede to him, therefore, a right constructed by a fiction of law, for the purpose of subserving the ends of justice, is tantamount to conceding that a contractual right of action may be implied by law in favor of one who by the voluntary violation of his covenant, produces a status of non-feasance and default, from which acts of deliction he seeks to reap a benefit and extract a reward; an anomaly, as we have seen, which can find no support in legal principle.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 14.

*For reversal*—None.