J. W. CARTER MUSIC CO. v. BASS, Collector of Internal Revenue.

District Court, S. D. Texas, at Houston. June 15, 1927.

No. 833.

**1. Internal revenue ⬡⟾38(4)—Action to recover taxes is in assumpsit for money had and received.**

Action against collector of internal revenue to recover taxes paid is essentially an action of assumpsit for money had and received.

**2. Internal revenue ⬡⟾38(3)—Agreement affirming lump statement of account covering assessments over a series of years held not conclusive (Revenue Act 1921, § 1312 [Comp. St. § 6371⅘gg]).**

Revenue Act 1921, § 1312 (Comp. St. § 6371⅘gg), providing that if, after a determination and assessment of a tax, the taxpayer shall pay it without protest, a subsequent

agreement in writing between the taxpayer and Commissioner that such determination and assessment shall be final and conclusive shall bar any action to amend, modify, or set it aside, contemplates a precise assessment of taxes for a particular year, made primarily on the taxpayer's return and secondarily by the collector, based on that return, and an agreement approving a lump statement of account covering a series of years is not within the statute.

**3. Internal revenue ⊕⇒38(3)—Tax wrongfully exacted from plaintiff held recoverable in action for money had and received, notwithstanding agreement approving assessment (Revenue Act 1921, § 1312 [Comp. St. § 6371⅘gg]).**

Where plaintiff paid an internal revenue tax, which admittedly he did not owe, on a false and unjust demand by the collector, based on a misrepresentation of fact by the department, an agreement approving the assessment, signed by plaintiff in ignorance of the facts, cannot, under Revenue Act 1921, § 1312 (Comp. St. § 6371⅘gg), be set up to defeat an action to recover the amount, as money had and received and which equitably belongs to plaintiff.

At Law. Action by the J. W. Carter Music Company against J. W. Bass, Collector, of Internal Revenue. Judgment for plaintiff.

Andrews, Streetman, Logue & Mobley, of Houston, Tex., for plaintiff.

H. M. Holden, U. S. Dist. Atty., and Howell Ward, Asst. U. S. Atty., both of Houston, Tex., for defendant.

HUTCHESON, District Judge. This is a suit at law, brought under the authority of and in accordance with the statutes of the United States allowing such suit, and the principles of the common law controlling same, against J. W. Bass, collector of internal revenue, to recover from him personally for sums collected by him and paid to him as taxes in excess of amounts actually due by plaintiff.

[1] That such a suit can be maintained, that it is personal, and that it is controlled by the common-law principles of a suit in assumpsit on the money counts, except as modified by statute, is well established by the authorities. Sage v. United States, 250 U. S. 37, 39 S. Ct. 415, 63 L. Ed. 828; Smietanka v. Indiana Steel Co., 257 U. S. 4, 42 S. Ct. 1, 66 L. Ed. 99; International Paper Co. v. Burrill (D. C.) 260 F. 664; New York Life Ins. Co. v. Anderson (C. C. A.) 263 F. 527; Holmes, Federal Taxes (6th Ed.) 1547. Of such suits Holmes, supra, says: "Suits against collectors are brought on the theory of money had and received. In such suits the plaintiff may recover only such money as he is in equity entitled to, and as defendant is not entitled to retain." In the Anderson Case, supra, it is

said: "That a taxpayer's suit of this sort is essentially an action of assumpsit for money had and received has been too long settled to admit of doubt. * * * Any assumpsit of this kind is of an equitable nature and of comparatively modern growth."

The case made here is simply this, as established by plaintiff and admitted by defendant: Plaintiff paid defendant, for the year 1920, $4,950.34 more than was due for that year. This payment was made to defendant upon his assertion to plaintiff that that amount was due, and upon his demand for payment, and plaintiff would not have paid it, except for the claim and demand. From this statement it follows, nothing else appearing, that from the standpoint of natural justice and equity defendant has taken and is withholding from plaintiff without right $4,950.34 of plaintiff's money.

Upon what theory, then, does the defendant refuse payment, and does he contest it here? Simply this: That though the defendant recognizes the injustice of the situation, that the United States should keep money which had been wrongfully exacted from plaintiff through him, and has endeavored to assist the taxpayer to obtain a refund, he is prevented from making such refund, and required to defend this suit, by a ruling from Washington that, "while there is no doubt that the opinion works a hardship on the taxpayer," they are of the opinion that plaintiff is not entitled to recover because of the fact that, after plaintiff had, on December 5, 1922, paid the money for which it sues, it did on October 6, 1923, execute an agreement in writing, which agreement they say was executed under the authority of, in accordance with, and has the effect ascribed to it by section 1312 of the act of 1921 (Comp. St. § 6371⅘gg) and section 1106b of the act of 1926 (44 Stat. 113), as follows:

"Sec. 1312. That if after a determination and assessment in any case the taxpayer has without protest paid in whole any tax or penalty, or accepted any abatement, credit, or refund based on such determination and assessment, and an agreement is made in writing between the taxpayer and the Commissioner, with the approval of the Secretary, that such determination and assessment shall be final and conclusive, then (except upon a showing of fraud or malfeasance or misrepresentation of fact materially affecting the determination or assessment thus made) (1) the case shall not be reopened or the determination and assessment modified by any officer, employee, or agent of the United States, and (2) no suit,

action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States."

The agreement is as follows:

"This agreement, made this 6th day of October, 1923, under and in pursuance of section 1312 of the Revenue Act of 1921, by and between J. W. Carter Music Company, a taxpayer having its principal place of business at Houston, Texas (hereinafter referred to as the taxpayer), and the Commissioner of Internal Revenue (hereinafter referred to as the Commissioner) with the approval of the Secretary of the Treasury:

"Whereas, between the 24th day of July, 1918, and the 24th day of February, 1923, there was assessed against the taxpayer the sum of twenty-seven thousand nine hundred sixty-four dollars and eighty-six cents ($27,964.86) as the amount of taxes due the United States of America from the taxpayer on account of corporation income and profits tax for 1917 to 1920, inclusive; and

"Whereas, the taxpayer pursuant to such assessment between the twenty-fourth day of July, 1918, and the twenty-fourth day of February, 1923, paid the sum of twenty-seven thousand nine hundred sixty-four dollars and eighty-six cents ($27,964.86) as taxes due the United States of America on account of said corporation income and profits tax for 1917 to 1920, inclusive; and

"Whereas, there has been a determination by the Commissioner that the sum of twenty thousand three hundred twenty-three dollars and ten cents ($20,323.10) is the correct amount for which the taxpayer was liable on account of said corporation income and profits tax for 1917 to 1920, inclusive; and

"Whereas, the Commissioner has made a credit based on such determination and such assessment of the sum of seven thousand six hundred forty-one dollars and seventy-six cents ($7,641.76) against taxes due from the taxpayer on account of corporation income and profits taxes for 1917 to 1920, inclusive, and the taxpayer has accepted such credit:

"Now this agreement witnesseth that the taxpayer and the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, hereby mutually agree that such determination of the sum of twenty thousand three hundred and twenty-three dollars and ten cents ($20,323.10) as the correct amount of taxes for which the taxpayer was liable on account of said corporation income and profits tax for 1917 to 1920, incorporated, and such assessment as reduced by the amount

credited as aforesaid shall be final and conclusive.

"In testimony whereof the parties to these presents have hereunto set their hands and seals the day and year first above written. J. W. Carter Music Company, Taxpayer, by J. W. Carter, President. D. H. Blair, Commissioner. Signed, sealed and delivered in the presence of G. W. Garvin. Approved Oct. 8, 1923. A. W. Mellon, Secretary."

The facts under which this payment was made and the agreement executed are that an audit of plaintiff's returns, made in 1921 at a time when plaintiff had paid one installment of the taxes, showed plaintiff to be due $7,955.97. After plaintiff had paid the remaining installments of the 1921 tax shown in his own return to be due, to wit, $4,950.34, some one in the central office at Washington in 1922 made a positive misrepresentation of facts that "an audit of plaintiff's income tax for 1920 in connection with the report of the internal revenue agent detailed upon that case disclosed that plaintiff was due an additional tax for 1920 of $7,955.97," and this misrepresentation was sent to the collector, the defendant, and by him transmitted to plaintiff as the basis for the unjust demand, which plaintiff, on December 6, 1922, complied with by paying the defendant $4,950.34 more than was due by it. As a matter of fact, when this misrepresentation was made, an audit of plaintiff's income tax, in connection with the report referred to, showed plaintiff to be due only $3,005.63, instead of $7,955.97, since plaintiff had, after the making of the agent's report in April, 1921, paid to the United States $4,950.34 of the $7,955.97 which in April, 1921, it had owed, and was only due $3,005.63.

Plaintiff meets the defense of the agreement with two propositions: (1) That there was no assessment and determination of taxes for the year 1920 made and agreed to as contemplated in the statute. (2) That, if there was such an assessment and agreement made as contemplated by the statute, it cannot constitute a defense to this cause, because, if in fact made, the payment by plaintiff and the agreement following were all induced by a misrepresentation of fact, which under the very terms of the statute deprives them of any effect.

[2] Examining these contentions, I think they both must be sustained. As to the first, it is evident that the statute contemplates, not a lumping statement of account for a series of years, as this agreement purports to be, but a precise assessment of taxes for a particular year, made primarily by the taxpayer's re-

turn, and secondarily by the collector, upon the basis of that return. Here we have no assessment, but merely an account stated, as the basis for the unjust exaction from plaintiff and the subsequent agreement seeking to sanctify and consecrate that exaction.

[3] As to the second point, while defendant presents the situation as arising, not from a misrepresentation of fact, but as a mutual mistake, I think it plain that the origin of the matter was in some one's misrepresentation of the state of plaintiff's account, made originally to the defendant as the basis for his demands, and repeated by defendant to the plaintiff as the basis for plaintiff's payment. If, therefore, this were, as the defendant seems to think it is, a suit to set aside the agreement and assessment, plaintiff should defeat the agreement upon these direct attacks upon it.

I think, however, it is plain that plaintiff's suit is not brought to set aside the agreement, but to recover money unjustly withheld from it by defendant. · As far as plaintiff is concerned, the assessment may stand as an assessment—the agreement as an agreement. Plaintiff is not concerned with that. It merely sues, ex æquo et bono, to recover its money wrongfully withheld. That plaintiff should have its recovery, and upon this broad ground, I think plain from the authorities declaring the nature of plaintiff's action, the considerations from which it springs, and the defenses to it which may be asserted. An examination of the controlling authorities will satisfactorily establish the correctness of this view.

In Moses v. McFarlane, 2 Burroughs, 1005, where the statement of the principle was first clearly announced, it is said: "The second objection is that no assumpsit lies, except upon an express or implied contract, but here it is impossible to present any contract to refund money which the defendant recovered by an adverse suit. To which we answer, if the defendant be under an obligation from the ties of natural justice to refund, the law imposes a debt and gives an action founded on the equity of plaintiff's case, as it were, upon a contract quasi ex contractu, as the Roman law expresses it. This kind of equitable action to recover back money which ought not in justice to have been paid is very beneficial and therefore much encouraged. It lies only for money which ex æquo et bono the defendant ought to refund. It does not lie for money paid by plaintiff which is claimed of him as payable on a point of honor or honesty although it could not have been recovered from him through any course of law, as in the payment of a debt barred by the statute of limita-

tion, or contracted during infancy, or to the extent of principal and legal interest upon a usurious contract, or for money lost at play, because in all these cases the defendant may defend with a safe conscience, though by positive law he is barred from recovery. In other words, the gist of this kind of action is that the defendant, under the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."

In 2 R. C. L. p. 778, the editor, discussing action on money counts, says: "Indebitatus assumpsit, in the form of the count for money had and received, became available in all cases where the law would raise a duty to pay money. Though an action at law, it is equitable in its nature, and is said to resemble a bill in equity, and to lie whenever a bill in equity would lie. * * * It is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it, and ex æquo et bono it belongs to another. * * * Any facts, circumstances or dealings from which it appears that defendant has in his hands money of the plaintiff which he ought in justice and conscience to pay over to him are competent evidence to support the action."

In Heywood v. Northern Assurance Co., 133 Minn. 360, 158 N. W. 632, Ann. Cas. 1918D, 241, the matter is stated thus: "The action of money had and received was invented by the common-law judges to secure relief from the narrow restrictions of the common-law procedure, which afforded no remedy in too many cases of merit."

In Whitcomb v. Brant, 90 N. J. Law, 245, 100 A. 175, L. R. A. 1917D, 609, it is said: "The common-law action of assumpsit for money had and received * * * was based upon an equitable consideration, superimposed upon a pure legal or moral duty."

And that a defendant cannot be heard to set up any defense against natural justice and right, see Elgin v. Gross-Kelly, 20 N. M. 450, 150 P. 922, L. R. A. 1916A, 711, where it is said: "It admits of any defense which shows the plaintiff ought not, in good conscience, to recover. 'In one word, the gist of this kind of action is that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity, to refund the money.'"

"The action of money had and received," says the court in Heywood v. Northern Assurance Co., 133 Minn. 360, 158 N. W. 632, Ann. Cas. 1918D, 241, "is founded on the

principle that no one ought unjustly to enrich himself at the expense of another."

The principle of law governing this form of action is: "Where money has been paid under a mistake as to a material fact, to one not entitled thereto, and who cannot in good conscience receive and retain it, the law raises an implied promise on his part to refund it, and an action will lie to recover it back." Elgin v. Gross-Kelly, 20 N. M. 450, 150 P. 922, L. R. A. 1916A, 711.

When the fact is proved that the defendant has the money of the plaintiff, if he cannot show a legal or equitable ground for retaining it, the law creates the privity and the promise. Ann. Cas. 1918D, 246, quoting from Brand v. Williams, 29 Minn. 238, 13 N. W. 42.

The evidence here establishes that the money, ex æquo et bono, belongs to plaintiff; that it was wrongfully and by the assertion of an unjust and false demand exacted from plaintiff, and is being wrongfully withheld. The court will therefore in this action disregard the agreement invoked, because to permit it to be set up would result in permitting an equitable fraud—would result in sanctifying and protecting in a form of action the very basis of which is the righting of a wrong, a wrongful and unjust action.

Being of the opinion that plaintiff is clearly entitled to recover the money sued for, with interest, it will be so ordered.