## MOORE v. UNITED STATES.

### No. 42855.

Court of Claims.
March 4, 1935.

Preston B. Kavanagh, of Washington, D. C. (Karl D. Loos, of Washington, D. C., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (John T. Koehler, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and LITTLETON, GREEN, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

In 1927 the decedent, Martin B. Moore, sold his interest in certain oil-producing land for $1,666,666.67 realizing a profit on such sale. Part of the consideration received from the purchaser consisted of ten interest-bearing promissory notes, each in the face amount of $100,000 payable one each year for ten years, beginning with the year 1928, and secured by a deed of trust on the property sold. One of the notes of $100,000 was paid in 1928.

Martin B. Moore died March 27, 1929, and at the time of his death he was the owner of the nine remaining notes, none of which was due or paid. All these unpaid notes became, upon Moore's death, a part of his gross estate. When the sale was made in 1927 the decedent elected to treat it as an installment sale, under authority of section 212 (d) of the Revenue Act of 1926, 26 USCA § 953 (d), reporting as a profit thereon for 1927 and 1928 the proportion of the total profit that the payments received by him in those years bore to the total payments to be made under the contract by which the sale was consummated.

The Commissioner of Internal Revenue, acting under the authority of section 44 (d) of the Revenue Act of 1928, 26 USCA § 2044 (d), determined that the fair market value of the nine unpaid notes owned by the decedent at the time of his death on March 27, 1929, was $655,000 and that the cost allocable to these notes out of the cost of the property sold in 1927 was $461,099.47. The executrix does not contest the correctness of this determination. The difference of $193,900.53 was included by the Commissioner as taxable income of the decedent for the period January 1 to the date of his death, March 27, 1929, resulting in an income tax, which, with interest thereon, amounted to $23,937.41. This tax was assessed and paid. Thereafter a claim for refund was duly filed by the executrix, which claim was rejected by the Commissioner November 30, 1932, and this suit was timely instituted.

The defendant demurs to the petition on the ground that it does not set forth facts sufficient to constitute a cause of action entitling plaintiff to a judgment against the United States.

The question raised by plaintiff is whether upon the death of the holder of certain unmatured promissory notes, received as a part of the consideration for the sale of property in a prior year, an income tax may lawfully be collected from the decedent for the period prior to his death upon a profit measured by the difference between the cost of the notes and their fair market value at the date of death.

Section 212 (d) of the Revenue Act of 1926, 26 USCA § 953 (d) provides that: "Under regulations prescribed by the commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In

the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

And section 44 (d), title I, of the Revenue Act of 1928, 26 USCA § 2044 (d), provides that: "(d) Gain or Loss upon Disposition of Installment Obligations. If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange —the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full."

Article 355 of Regulations 74 provides that:

"If an installment obligation is satisfied at other than its face value or is sold or exchanged, gain or loss results to the extent of the difference between (1) the excess of the face value of the obligation over the amount of income which would be returnable were the obligation satisfied in full and (2) the amount realized upon such disposition.

"If an installment obligation is distributed, transmitted, or disposed of otherwise than by sale or exchange, gain or loss results to the extent of the difference between (1) the excess of the face value of the obligation over the amount of income which would be returnable were the obligation satisfied in full and (2) the fair market value of the obligation at the time of such distribution, transmission, or disposition.

"The entire amount of gain or loss resulting from the disposition or satisfaction of installment obligations shall be recognized except as provided in section 112 and articles 571–580."

Plaintiff contends, first, that death is not such an occurrence as will give rise to income in a constitutional or statutory sense and that section 44 (d), supra, imposes a direct tax upon property which is void for lack of apportionment under article 1, § 2, cl. 3, and article 1, § 9, cl. 4, of the Constitution of the United States; second, that section 44 (d) cannot be applied to a completed sale which took place prior to its passage; and, third, that the Commissioner erred in computing the tax under section 44 (d) upon the holder of the promissory notes for the period January 1 to March 27, 1929, for the reason that it is the transmission of the notes which gives rise to the supposed taxable gain, and as such transmission could only occur by reason of death any gain derived would be a gain to his estate, a separate taxable entity, after his death, and that the tax collected in this case should be refunded because asserted against the wrong person for the wrong period.

The questions presented in this case have been decided by the United States Board of Tax Appeals in favor of the Government in Erskine M. Ross, by Oscar Lawler and Robert E. Ross, Executors, v. Commissioner, 29 B. T. A. 227; Provident Trust Co. of Philadelphia, Executor of Estate of Owen Osborne, v. Commissioner, 29 B. T. A. 374; Alexander M. Crane et al. v. Commissioner, 30 B. T. A. 29, with which decisions we agree. The fact that the sale of the property giving rise to the profit in question occurred before the effective date of the Revenue Act of 1928 is, we think, of no consequence. To this extent section 44 (d) is retroactive. Ross v. Commissioner, supra; George W. Williams, Executor, Estate of Francis Williams, v. Commissioner, 30 B. T. A. 1346. These cases hold that the application of the section denies no privilege which any revenue act intended a decedent should enjoy. The language of the section shows that it was intended to impose the tax upon the unreported portion of a profit on a sale where the holder of the property, representing such profit, died after the passage of the 1928 act or where the notes received were distributed, sold, or otherwise disposed of where death does not occur. The taxation of such profit does not lay a direct tax upon property. Except for the

privilege extended by section 212 (d) of the 1926 act, any profit received upon a sale, such as the one made by the decedent in 1927, would have been taxable in that year to the extent of the fair market value of the interest-bearing promissory notes received by the decedent as a part of a consideration for the property sold. The decisions on this point are uniform. Even in this case the promissory notes received by Martin B. Moore at the time of the sale would have constituted taxable income in that year to the extent of the fair market value if the cash payment received at the time of the sale had exceeded one-fourth of the sales price of the property. Their nature, as income under the sixteenth amendment, was not changed merely because Congress permitted the owner of such notes to postpone reporting such profit for taxation until the notes should be distributed, sold, or otherwise disposed of during his life or transmitted upon his death. The privilege extended to a taxpayer by section 212 (d) of the 1926 Act to defer the payment of the tax until the installment obligations had been liquidated does not by the express provision of section 44 (d) extend to the situation where death intervenes while some of the obligations are yet outstanding.

In granting the taxpayer the privilege of deferring the tax on the profit arising from a sale to some future year, the Congress did not surrender its authority to impose the tax upon that profit upon the taxpayer who received it, if the property representing the profit should be transmitted to others by his death.

In our opinion, the third contention made by plaintiff, that if a tax may be legally imposed upon an untaxed profit represented by the fair market value of notes when such notes are "transmitted" it falls upon the estate for the taxable period subsequent to the date of death rather than the decedent for the period prior to his death, is without merit. Section 44 (d) manifests a clear intent to lay the tax upon the gain represented by notes to the person by whom such gain was derived, which, in this case, was the decedent. The statute simply withdrew, simultaneously with death, the installment privilege extended by the statute in force at the time the sale was made in 1927. The statute places property received as a profit by the decedent during his lifetime and transmitted by his death in the same class as the distribution, sale, or other disposition of such property during the taxpayer's life-

time. A contrary holding would result in the profit, represented by the fair market value of the notes, escaping taxation for the reason that the estate of the decedent, being a distinct taxable entity, is taxable under the statute only upon the difference between the fair market value of such property at the date of death and the amount ultimately realized therefor.

The demurrer is sustained, and the petition is dismissed. It is so ordered.