**ROSE v. McEACHERN.**

No. 7911.

Circuit Court of Appeals, Fifth Circuit.

Nov. 9, 1936.

Edward P. Hodges and Sewall Key, Sp. Assts. to Atty. Gen., Robert H. Jackson, Asst. Atty. Gen., and Lawrence S. Camp, U. S. Atty., and M. Neil Andrews, Asst. U. S. Atty., both of Atlanta, Ga., for appellant.

W. A. Sutherland and Joseph B. Brennan, both of Atlanta, Ga., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to recover as overpayments taxes paid in 1929, 1930, and 1931. They were paid by appellee as administrator of the estate of S. C. McEachern on account of collections of certain installment obligations held by the deceased at his death. Appellant, admitting that the amounts sued for had been in form erroneously paid, defended against paying them back on the ground that those amounts and more were due by plaintiff to the United States on account of those obligations, and that therefore, "under the circumstances of the case, he was not obligated by the ties of natural justice and equity to refund the money."

In support of this position, he pointed out, by answer and stipulation, that under section 44(d) of the Revenue Act of 1928 (26 U.S.C.A. § 44(d) and note), the transmission by death of the unpaid installments should have been returned for the period from January 1, 1928, to December 12, 1928, and a tax of $11,625, an amount greatly in excess of the amount sued for, paid on account thereof. He insists that having failed to make such return, and having instead made incorrect and misleading returns as upon sales for each of those years, plaintiff may not now, limitation having barred the collection of the larger sum due the United States, get back the smaller sums paid on his incorrect returns.

The District Judge thought that these matters did not constitute an estoppel or otherwise operate to defeat the suit. He excluded the stipulation regarding them as irrelevant. The cause then standing solely on the stipulation that the sums sued for had been erroneously collected as taxes, he directed a verdict for plaintiff.

Appellant is here complaining of the overruling of his motion for a direction, of the direction of verdict for plaintiff, and of the ruling of the court excluding the stipulation. These are the facts as stipulated.

On September 3, 1924, S. C. McEachern, the decedent, by a purchase contract sold 500 shares of the capital stock of the Industrial Life & Health Insurance Company for the sum of $300,000, $30,000 to be paid in cash, the balance in quarterly installments of $7,500 each, payable on March 1, 1925, and on the first day of each and every third month thereafter. The

stock had cost him $10 a share, or $5,000. On December 12, 1928, with installments aggregating $150,000 still unpaid, he died intestate. On February 4, 1929, appellee was granted letters testamentary and qualified as administrator. For the years 1929, 1930, and 1931 he filed estate income tax returns, reporting in each year, as income, amounts equal to the profits on the installments collected in it, based on the original cost of the stock to decedent, and paid taxes accordingly. The returns, however, did not show these profits as derived from collections on installment obligations. Each showed a complete sale in that year of 50 shares. Plaintiff has made no return of the gain or profit received from the transmission of the installments. The only reference he ever made to these installments was in the federal estate tax return to list, among the assets of the estate, "unpaid balances of deferred payments on 250 shares of stock of the Industrial Life & Health Insurance Company under contract of S. C. McEachern to J. N. McEachern, as trustee, dated September 3, 1924, value $125,000." This value of $125,000 had been arrived at by discounting the face value of the $150,000 of future installment payments approximately 6.35 per cent. per annum from McEachern's death to the average due date of the installments.

Appellant insisted below, and insists here, that appellee having based his returns upon a misstatement of fact, and having paid his taxes upon that misstatement, is now, limitation having run, estopped to correct it by showing that he did not sell 50 shares in each of those years as he reported he had done, but merely in each year collected some of the deferred installment obligations. He cites in support cases holding that a taxpayer having asserted the existence of a state of facts and paid his taxes on that basis, though incorrect, one may not thereafter, when limitation has run against collection on the correct basis, unsay what he has said to recover back the sums he has paid. Shamrock Oil Co. v. Com'r (C.C.A.) 77 F.(2d) 553, 555; Hartwell Mills v. Rose (C.C.A.) 61 F.(2d) 441; Wheelock v. Com'r (C.C.A.) 77 F.(2d) 474; Swartz, Inc., v. Com'r (C.C.A.) 69 F.(2d) 633;

Adler v. Com'r (C.C.A.) 77 F.(2d) 733; Bothwell v. Com'r (C.C.A.) 77 F.(2d) 35; Larkin v. United States (C.C.A.) 78 F.(2d) 951; Crane v. Com'r (C.C.A.) 68 F.(2d) 640; Askin & Marine Co. v. Com'r (C.C.A.) 66 F.(2d) 776; Stearns v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647.

He argues, too, that when the nature of the action plaintiff has brought is considered, it must be plain that plaintiff cannot recover in it; for to do so he must show not merely that defendant has obtained money from plaintiff by one or another device which he was not entitled to employ, but that regardless of the method of its obtaining he withholds money from plaintiff which ex aequo et bono he may not justly withhold. J. W. Carter Music Co. v. Bass (D.C.) 20 F.(2d) 390; Champ Spring Co. v. United States (C.C.A.) 47 F.(2d) 1; Hartwell Mills v. Rose (C.C.A.) 61 F.(2d) 441; Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421.

Appellee replies that every element of estoppel is lacking here; that appellee did not misstate any fact with reference to the particular taxes collected, which has or could have misled any one. He argues further that from the statement in the estate tax return showing the installment obligations as assets of the estate, the Commissioner was charged with knowledge, and did in fact know, that the administrator was under a mistake of law erroneously carrying forward the practice of the decedent in returning, as income, gains on the installments as received. Finally, he argues that section 44 (d) of the 1928 act, the statute appellant invokes, is without force as unconstitutional.

We take up the last point first. No court which has examined the statute has yet thought it unconstitutional.[1] We do not think it is. We regard as unsubstantial the difference appellee seeks to draw between the case of a sale made before and one made after the passage of the act. It is true that in some of the cases, notably Crane v. Helvering (C.C.A.) 76 F.(2d) 99, which dealt with installment sales made after the statute took effect, some point is made of the volition of the

[1] Crane v. Helvering (C.C.A.) 76 F.(2d) 99; Nuckolls v. U. S. (C.C.A.) 76 F.(2d) 357; Lawler v. Com'r (C.C.A.) 78 F.(2d) 567; Williams v. Com'r (C.C. A.) 79 F.(2d) 518; Provident Trust Co. of Philadelphia v. Com'r (C.C.A.) 76 F.(2d) 810; Moore v. United States (Ct. Cl.) 10 F.Supp. 143.

seller in adopting the installment basis with knowledge of the existence of the statute. We agree, however, with the views expressed in Lawler v. Com'r (C.C.A.) 78 F.(2d) 567 and Moore v. United States (Ct.Cl.) 10 F.Supp. 143, that the time of the sale, whether before or after the passage, is without substantial bearing on the validity of the act.

We come, then, to consider appellee's case as it really stands, the case of one who, though he should have paid on a correct basis considerably more as taxes on account of these installment obligations than he has paid on an incorrect basis, cannot, because of the course he has taken, limitation having now run, be made to pay on the correct basis. So considering it, we think it perfectly plain that though the sums he paid were paid on a particular theory of obligation which did not exist, he may not recover these amounts back because they are in sum less than the amount which, on a correct theory of obligation, he ought to have paid on account of these installment obligations. This is so, not because of the existence of a technical estoppel or a waiver, but because his action is equitable in its nature and grounds, and he may not succeed in it unless he can show that the defendant has money which, ex aequo et bono, the defendant ought to refund.

In Moses v. McFarlane, 2 Burroughs, 1005, where the statement of the principle was first clearly announced, it is said: "If the defendant be under an obligation from the ties of natural justice to refund, the law imposes a debt and gives an action founded on the equity of plaintiff's case, as it were, upon a contract quasi ex contractu, as the Roman law expresses it. This kind of equitable action to recover back money which ought not in justice to have been paid is very beneficial and therefore much encouraged. It lies only for money which ex aequo et bono the defendant ought to refund. It does not lie for money paid by plaintiff which is claimed of him as payable on a point of honor or honesty although it could not have been recovered from him through any course of law, as in the payment of a debt barred by the statute of limitation, or contracted during infancy, or to the extent of principal and legal interest upon a usurious contract, or for money lost at play, because in all these cases the defendant may defend with a safe conscience, though by positive law he is barred from recovery. In other words, the gist of this kind of action is that the defendant, under the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."

While generally appropriate in efforts to get back money which is being wrongfully withheld, it is peculiarly appropriate in actions in fact between the taxpayer and the government, though the suit is in form against the collector. Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265. Sometimes in these actions the inability to recover the money is spoken of as springing from estoppel; sometimes it is put on the more general ground of the inequities of the case. Grounded in repugnance against unjust enrichment, the action is given wide and liberal application in all cases where money is wrongfully withheld. It may not be used to obtain money which the plaintiff ought not in good conscience, to have back.[2]

The judgment is reversed, and the cause remanded for further and not inconsistent proceedings.

[2] Cf. United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859; United States Paper Exports Ass'n v. Bowers (C.C.A.) 80 F.(2d) 82; Myers v. Hurley Motor Co., 273 U.S. 18, 27, 47 S.Ct. 277, 71 L.Ed. 515, 50 A.L.R. 1181; Richardson Lubricating Co. v. Kinney, 337 Ill. 122, 168 N. E. 886; Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L. R. 1335.