ROBERT W. and MARY A. BRINKMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN GRIMES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brinkman v. Commissioner
Docket Nos. 23703-87; 23706-87.
United States Tax Court
T.C. Memo 1989-217; 1989 Tax Ct. Memo LEXIS 218; 57 T.C.M. (CCH) 331; T.C.M. (RIA) 89217; May 4, 1989; As corrected May 8, 1989 *218 R offered to settle issues regarding Ps' investment in various partnerships by allowing "out-of-pocket" expenditures for the taxable years at issue. The offer was communicated to Ps' representative. Ps, through their representative, entered into closing agreements with R wherein the "out-of-pocket" expenditures were allowed for the 1982 taxable year. Ps also had "out-of-pocket" expenditures for years subsequent to 1982 which were not incorporated into the closing agreement. Sec. 7121, I.R.C. 1954, would permit the setting-aside of a closing agreement upon a showing of fraud or malfeasance, or misrepresentation of a material fact. Held, the circumstances of this case constitute unilateral mistake, error and/or negligence and are insufficient to set aside the closing agreements. James E. Bachman, for the petitioners. J. Anthony Hoefer, for the respondent. GERBER
MEMORANDUM OPINION GERBER, Judge: These consolidated cases are before us to consider whether closing agreements between petitioners and respondent are invalid or, if valid, whether there are any other remedies available to petitioners. These cases were presented fully stipulated. Petitioners are Robert W. and Mary A. Brinkman (Brinkmans) and John Grimes (Grimes) all of whom resided in Nebraska at the time of the filing of their respective petitions. Both the Brinkmans and Grimes, during 1982, invested in a partnership named Midwest Monetary, Ltd. (Midwest). Grimes, during 1982, also invested in a partnership named Landmark Profits, Ltd. (Landmark). Midwest and Landmark were organized by Craig B. Forney (Forney). Through Forney, petitioners obtained the legal services of George Qualley (Qualley). Petitioners claimed tax benefits on their 1982 (and subsequent years) Federal income *220 tax returns and had made so-called "out-of-pocket" expenditures both in 1982 and 1983 with respect to the partnerships. Petitioners' income tax returns for the taxable year 1982 were examined by respondent's agents, and administratively, their cases proceeded to the Appeals Office of the Internal Revenue Service (Appeals). Prior to these partnership investments, petitioners had not been involved with and had no knowledge of the workings of the appeals function of the Internal Revenue Services' administrative controversy resolution system. Petitioners relied completely upon Qualley to represent them at the Appeals Office. Qualley represented several different partners of Midwest and Landmark, including petitioners, in his appearances before and correspondence with Appeals. During the early part of 1985 a settlement was formulated whereby respondent would allow out-of-pocket expenditures and waive additions to tax under section 6653(a)(1) and (a)(2). [1]
*221 Qualley did not inform petitioners that out-of-pocket expenditures could or would be allowed for years other than 1982, the year under examination by respondent. Petitioners were not otherwise aware that they could receive some allowance for out-of-pocket expenditures for years after 1982. Upon advice of Qualley, petitioners entered into Closing Agreements (Forms 906) concerning the partnership investments under which specific amounts were allowed for 1982. The closing agreements were clearly worded and could not be interpreted to permit any allowance for out-of-pocket expenditures for taxable years other than 1982. At the time of executing the closing agreements, petitioners were in possession and could have produced evidence of out-of-pocket expenditures for years subsequent to 1982. However, no such evidence or statements were presented to respondent. Additionally, respondent was otherwise unaware that petitioners had out-of-pocket expenditures for years other than 1982. Petitioners would not have entered into and executed the closing agreements if they had known of their entitlement to additional allowances which were not provided for in the agreement. Under respondent's *222 settlement offer, "out-of-pocket" amounts proven for years subsequent to 1982 would also have been allowed. Section 7121(a) authorizes respondent to enter into closing agreements with taxpayers in respect of any tax for any taxable period. "[S]uch agreement shall be final and conclusive * * *." Sec. 7121(b). The closing agreement may bind the parties regarding subsequent taxable periods with respect to one or more separate items or transactions. Sec. 301.7121-1(b)(3), Proced. & Admin. Regs. Section 7121(b) contains certain exceptions to the "final and conclusive" nature of a closing agreement "upon a showing of fraud or malfeasance, or misrepresentation of a material fact." We must focus here upon whether such exceptions exist in this case. This is a subject which courts have not recently or often addressed. The preambles to the closing agreements between the parties expressly reference the specific partnership interest and "any items of income, gain, loss, deduction, credit * * * for the taxable year ending December 31, 1982 and subsequent taxable years." The operative paragraphs *223 of the agreements are all essentially similar to the following representative closing agreement language used for the Brinkmans: NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes that: 1) The taxpayers' payment of $ 27,500.00 expended to acquire the partnership interest is an ordinary deduction in the year 1982, and thereafter the taxpayers' basis with respect to said acquisition shall be zero. 2) Except as provided in this agreement no losses, deductions, or credits attributable to the partnership or the master recording shall be allowed. There is no doubt that the express terms of the subject closing agreements preclude the allowance of deductions for out-of-pocket or other expenditures for taxable years subsequent to 1982. S. S. Pierce Co. v. United States,93 F.2d 599 (1st Cir. 1937). The party seeking to set aside a closing agreement bears the burden of proving fraud, malfeasance or misrepresentation. Ingram v. Commissioner,32 B.T.A. 1063 (1935), affd. 87 F.2d 915 (3d Cir. 1937). Petitioners contend *224 that there was a misrepresentation of material facts because they were not informed by their attorney of the possibility of additional deductions and because the additional deductions were omitted from the closing agreements. Petitioners do not contend the existence of fraud or malfeasance. Petitioners place the cause of the alleged misrepresentation upon their own representative, Qualley. Petitioners also appear to imply that respondent's failure to include the later year payments in the closing agreement may amount to misrepresentation. The specific question we must decide is what constitutes a misrepresentation within the meaning of section 7121. The statute does not contain a definition or explanation of the term "misrepresentation." The common dictionary definition of "misrepresent" is "to represent falsely; give an untrue or misleading idea of." Webster's New World Dictionary, 942 (1962). A legal dictionary more elaborately defines the same term, as follows: "Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts." Black's Law Dictionary, 903 (5th ed. 1979). Both definitions *225 boil down to an untrue statement of fact which, by implication, was intentional. Initially, we do not consider respondent's agent's role here to constitute a misrepresentation, either intentionally or inadvertently. The Appeals Officer communicated the offer, which would have permitted out-of-pocket expenditures for 1982 and other years to petitioners' representative. Where taxpayers are represented, communications to the representative are generally sufficient to constitute notice to the taxpayers. See, e.g., Lifter v. Commissioner,59 T.C. 818 (1973). Indeed, direct contact by respondent with a taxpayer who is represented by a lawyer is frowned upon, if not improper in most instances. A.B.A. Model Rules of Professional Conduct, Rule 4.2 (Aug. 1984). The Appeals Officer did not omit, misrepresent or in any way attempt to conceal information from petitioners or their representative. Although Qualley did not inform petitioners that the out-of-pocket offer of the Government was available for years other than 1982, it does not appear that Qualley's actions or omissions *226 were intentional or in the form of a misrepresentation. Because we have determined that Qualley's actions do not constitute a misrepresentation, it is not necessary to consider quantitatively whether the matter was "material." Assuming arguendo the actions of petitioners' representatives could be classified as or equivalent to a misrepresentation of material facts, would it be sufficient to set aside a closing agreement with respondent? In a situation where a taxpayer's representative or fiduciary may have misrepresented a material fact to the taxpayer, the Court of Claims held, "The statute [predecessor to section 7121] does not expressly limit the misrepresentations upon which the agreement may be set aside to statements made by the agents of the government, but a reading of the context shows plainly that the statute was not intended to apply to misrepresentations made by other parties." Hyde v. United States,59 F.2d 302, 303 (Ct. Cl. 1932). Another court refused to set aside a closing agreement, as urged by the taxpayer, where the taxpayer had made the representations. *227 Fink v. Bass, an unreported case (W.D. Tex. 1932) 15 AFTR 816, 3 Stand. Fed. Tax Service (CCH) par. 9449 (1932). The policy consideration underlying the statute which enables the parties to enter into closing agreements is to encourage final compromises and settlements and should favor such finality. Kehoe v. Commissioner,105 F.2d 552, 554 (3d Cir. 1939), revd. 309 U.S. 277 (1940); United States v. Bank of Commerce & Trust Co.,32 F. Supp. 942, 945 (W.D. Tenn. 1940). Also see Perry v. Page,67 F.2d 635, 636-637 (1st Cir. 1933); Hering v. Tait,65 F.2d 703, 705-706 (4th Cir. 1933). Even where the Internal Revenue Code sections, which were the subject of a closing agreement, were subsequently found unconstitutional, the closing agreement was not set aside. Aetna Life Ins. Co. v. Eaton,43 F.2d 711, 714 (2d Cir. 1930). Petitioners' failure to include allowances for out-of-pocket expenditures for years subsequent to 1982 in their closing agreements is due to petitioners' and/or their representatives' error, mistake of fact or negligence. *228 Section 7121 does not provide an exclusion for mistake or error of such a party or representative and such circumstances will not be sufficient to set aside a closing agreement. Commissioner v. Ingram,87 F.2d 915, 916 (3d Cir. 1937); Wolverine Petroleum Corp. v. Commissioner,75 F.2d 593, 595 (8th Cir. 1935); Bankers Reserve Life Ins. Co. v. United States,42 F.2d 313, 316 (Ct. Cl. 1930); Great Southern Life Ins. Co. v. United States,42 F.2d 319 (Ct. Cl. 1930); United States v. Bank of Commerce & Trust Co.,32 F. Supp. 942, 946 (W.D. Tenn. 1940). Petitioners cite J. W. Carter Music Co. v. Bass,20 F.2d 390 (S.D. Tex. 1927), in support of their contention that the closing agreement should be set aside. In that case, the District Court granted the taxpayer relief from a closing agreement because of the taxpayer's reliance upon respondent's agent's misrepresentation that the taxpayer owed additional tax. That misrepresentation was part of the inducement for the taxpayer's entering into the closing agreement. The facts in the *229 cases before us do not involve misrepresentations by respondent's agents or the taxpayers or their representatives. This "circumstance is just one of those unfortunate circumstances that can arise in any case, where the taxpayer is personally unfamiliar with income tax law and accounting procedure" and/or where the taxpayer's representative failed or forgot to inform them. Commissioner v. Ingram, supra at 916. Petitioners fallback or alternative approach is to request that we decide this case on equitable principles because the taxpayers believe they should not have to suffer for the mistake of another or because there was a "mutual mistake of fact." Initially, we note that there was a unilateral mistake, if any, in this case and respondent acted in accord with the known facts. Moreover, even if we were to employ equitable principles, the policy underlying the statutorily mandated finality for closing agreements would prohibit our doing so. To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. Section references, unless otherwise indicated, are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. Rule references, unless otherwise indicated, are to this Court's Rules of Practice and Procedure.↩