**C & R INVESTMENTS, INC. (formerly Sherold Crystals, Inc.), a Corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 178–70.**

United States Court of Appeals,
Tenth Circuit.

June 25, 1971.

Claude L. Rice, Kansas City, Kan. (James L. Baska Olathe, Kan. and Clarence H. Wood, Kansas City, Kan. on the brief) for plaintiff-appellant.

Richard W. Perkins, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., and Lee A. Jackson and Bennet N. Hollander, Attys., Dept. of Justice, and Robert J. Roth, U. S. Atty., of counsel, on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and McWILLIAMS, Circuit Judges.

BREITENSTEIN, Circuit Judge.

We are again concerned with a series of administrative mishaps which occurred in the Internal Revenue Service many years ago. When the case was first here, United States v. C & R Investments, Inc., 10 Cir., 404 F.2d 314, we reversed a district court decision that the taxpayer was entitled to a refund of $18,000 plus interest. On remand the court held for the government, 310 F. Supp. 222, and this appeal followed.

Regrettably, an understanding of the problem requires that we rehash the facts. The taxpayer, plaintiff-appellant C & R Investments, Inc., formerly known as Sherold Crystals, Inc., was a wholly owned subsidiary of Standard Coil Products, Inc. In March, 1954, taxpayer filed with the District Director of Internal Revenue in Wichita, Kansas, a tentative tax return for 1953 and attached its check for $18,000. The Wichita Director deposited the check in a suspense account. In May, 1954, Standard Coil filed with the District Director of Internal Revenue in Chicago, Illinois, a consolidated return for 1953 covering itself and all of its subsidiaries, including taxpayer. In an accompanying letter Standard Coil listed payments on estimated tax and included the $18,000 paid by taxpayer. In July, 1954, taxpayer wrote the Wichita Direc-

tor that its tax liability for 1953 was included in the consolidated return of Standard Coil and that it would file no separate return for that year. The Chicago Director assessed the tax liability of Standard Coil and its subsidiaries and credited the $18,000 payment. The Wichita Director did not transmit the $18,000 to the Chicago Director but kept it in his suspense account.

In August, 1954, Standard Coil sold all of the stock in taxpayer to Carl V. Rice and Ruth B. Rice. Thereafter, Mr. Rice learned of the $18,000 in the suspense account. In March, 1955, taxpayer filed its return for 1954 with the Wichita Director and asked that the $18,000 in the suspense account be credited against its liability. The Wichita Director allowed the credit and the taxpayer paid the balance of the tax due.

Standard Coil, in March, 1956, filed with the Chicago Director a claim for a tentative carry-back adjustment in its income tax liability for 1953 on account of losses sustained in 1955. The Chicago Director allowed certain adjustments and in so doing deducted the $18,000 which he had not received from the Wichita Director. In July, 1956, Standard Coil protested the treatment of the $18,000 item.

After several years of quiescence the matter came to life on July 19, 1960, when credit for the $18,000 was transferred from the account of the taxpayer on the books of the Wichita Director and was applied by the Chicago Director to the consolidated return of Standard Coil and its subsidiaries, including taxpayer, for 1953. Subsequently, the Wichita Director demanded payment by taxpayer of $18,000 plus interest because of unpaid tax liability for 1954. The taxpayer paid and in 1963 brought this suit to recover.

After the first trial the district court held that the application of the $18,000 to the taxpayer's liability for 1954 was in the nature of an erroneous refund, the recovery of which was barred by the 2-year limitation found in 26 U.S.C. § 6532 (b). On motion for reconsideration the government argued that its actions were

proper under the theory of deficiency assessment to which the 6-year limitation provided by 26 U.S.C. § 6502 applies. The district court reaffirmed its decision that the 2-year statute barred recovery of an erroneous refund and went on to say the government could not pursue the deficiency assessment theory because of the doctrine of equitable estoppel.

On appeal we rejected the erroneous refund argument and held that the government could proceed by deficiency collection. In so doing we commented that equitable estoppel is no bar to the correction by the Commissioner of a mistake of law. 404 F.2d at 315. We remanded for determination of the propriety of the deficiency collection procedures. The district court then held that there was no defect in such procedures and entered judgment for the government.

When the 1953 consolidated return was filed by the parent company, § 141 of the Internal Revenue Code of 1939, as amended, controlled such returns. As authorized thereby, the Secretary of the Treasury prescribed applicable regulations. One of the statutory conditions was that all affiliates consent to the consolidated return and another was that "[t]he making of a consolidated return shall be considered as such consent." The necessity of joint execution was removed by Treasury Regulation 129, § 24.12(a), which authorized the making of the consolidated return by the parent. Section 24.12(b) requires that each affiliate prepare and file Form 1122 consenting to the consolidated return by the parent. Taxpayer never executed or filed Form 1122.

Treasury Regulation 129, § 24.16(a), in pertinent part provides that, except for the making of the subsidiary consent required by § 24.12(b), the parent corporation is the sole agent for the consolidated group in all matters relating to group liability for the tax year in which the consolidated return is filed. It also gives to the Commissioner power to deal directly with a member of the group and, if he does so, that member has full authority to act for itself.

■ The mistake of the Wichita Director in not promptly forwarding the $18,000 to the Chicago Director started all the trouble. Taxpayer argues that the $18,000 was a deposit and not a tax payment. That may have been true originally but it was converted into a tax payment when the parent filed a consolidated return, the taxpayer notified the Wichita Director that it was not filing a separate return, the Chicago Director assessed the tax under the consolidated return, and the $18,000 was credited to the tax liability under the consolidated return. When all of these events occurred, the officers of taxpayer were also officers of the parent company.

We find nothing in Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, which suggests a contrary conclusion. The Court there held that the running of the statute of limitations on a suit for refund of estate taxes did not begin until the assessment of a deficiency even though the taxpayer had previously made an advance payment under protest and for the purpose of avoiding penalties and interest. The Court recognized the distinction between a deposit and payment and said that payment occurred on the application of the deposit to the satisfaction of the assessment. Ibid at 661, 65 S.Ct. 536. In the instant case assessment on the consolidated return was made in July, 1954, and credit was given for the $18,000. The deposit then became a payment. Nothing in Rosenman intimates that after the assessment and the credit of the $18,000 and after the disaffiliation of taxpayer, the taxpayer had the right to divert the $18,000 to the payment of its 1954 tax liability.

■ The nonexecution of Form 1122 is said to amount to a retention of authority over the $18,000 by the taxpayer. The requirement of the Form 1122 consent "is an administrative provision for the protection of the Commissioner." Landy Towel & Linen Service, Inc. of

Reading, Pa. v. Commissioner of Internal Revenue, 38 T.C. 296, 301, affirmed per curiam, 3 Cir., 317 F.2d 362. Taxpayer says that Landy does not apply because without the execution of Form 1122 there is no authority of the parent to act for the affiliate. In our opinion the execution of the form is not required when there is actual consent. The facts pertaining to the filing of the consolidated return and the nonfiling of a separate return establish actual consent. There is no creation of an agency by the unilateral acts of an agent. The notification by taxpayer to the Wichita Director that it was not filing a separate return was an acceptance of the consolidated return and a consent thereto.

■ The taxpayer contends that the concluding sentence of § 24.16(a), which reserves to the Commissioner the right to deal with any member of the consolidated group, authorized the Wichita Director to apply the $18,000 to the payment of taxpayer's 1954 tax. The regulation has no application here. When he made the erroneous credit to taxpayer's 1954 tax liability, the Wichita Director did not purport to invoke the Commissioner's authority to deal directly with the subsidiary. The Director acted after taxpayer's disaffiliation from the consolidated group and on instructions having no relevance to the taxpayer's 1953 tax liability, either separately or as a member of the consolidated group. We find nothing in the mentioned regulation which sanctions the action of the Wichita Director in crediting the $18,000 on the taxpayer's separate 1954 tax liability. That error compounded the original error of failure to transfer the amount to the Chicago Director. Those errors, taken either singly or together, gave no validity to the erroneous credit of the money on taxpayer's separate 1954 liability.

■ Taxpayer calls attention to § 24.15 of Treasury Regulation 129 which provides that the parent and each subsidiary member of an affiliated group are severally liable for the tax computed on the consolidated net income of the group. It argues that, by the withholding of the $18,000 from the refunds due on the carry-back adjustments, the government had collected all of the 1953 tax and nothing was due from any member of the group. The contention overlooks the fact that the error of the Wichita Director resulted in the refusal to credit that amount on the 1953 liability of the consolidated group. After the refund, Standard Coil was entitled to claim, and did claim, a further refund of $18,000. The record shows that in 1960 that sum was allowed to Standard Coil as a credit. We find no connection between the unpaid taxes owed by taxpayer for 1954 and the taxpayer's liability for 1953 taxes as a member of the consolidated group. The dispute is over the unpaid balance of the taxpayer's 1954 income and has nothing to do with whether the consolidated group paid or overpaid its 1953 tax.

Finally, taxpayer argues that the government was barred by equitable estoppel from making the deficiency collection of the $18,000. The theory is that (1) Standard Coil breached a warranty contained in its agreement for the sale of stock in taxpayer to the Rices, (2) an action on account of that breach was not pursued because of the application of the $18,000 to taxpayer's 1954 tax, and (3) the government did not pursue the deficiency collection procedure until the statute of limitations had run on any suit to recover for the breach of warranty. There is no connection between the breach of warranty and the deficiency collection. Any action for breach of warranty lay in the Rices. The deficiency collection was from the taxpayer. For tax purposes a corporation has an entity separate and apart from its stockholders.

■ The tax officials have the responsibility of collecting the taxes due, no more and no less. In the absence of statutory restrictions they have the power to correct their errors. Commissioner of Internal Revenue v. Newport Industries, Inc., 7 Cir., 121 F.2d 655, 656–657. The effort of the taxpayer to take advantage

**770**

of the errors of the Wichita Director does not impress us. Those errors created no authority in taxpayer to control the money after its disaffiliation. The 1960 deficiency assessment against taxpayer was not an attempt to re-collect the 1954 tax because that tax was unpaid to the extent of the erroneous credit. In our opinion the correction of the mistakes is not barred by any theory of equitable estoppel or by any statutory restriction. See Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746.

Affirmed.