**The BLACK PRINCE DISTILLERY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 80–1081 L.**

United States District Court, D. New Jersey.

April 17, 1984.

Daniel L. Rabinowitz, McCarter & English, Newark, N.J., for plaintiff.

D. Patrick Mullarkey, Asst. U.S. Atty., Dept. of Justice, Stephen T. Lyons, Asst. U.S. Atty., Washington, D.C., Newark, N.J., for defendant.

## MEMORANDUM OPINION

LACEY, District Judge.

Plaintiff is a producer of distilled spirits, with manufacturing facilities located in Clifton, New Jersey. During the years 1976 and 1977, it paid distilled spirits taxes imposed by 26 U.S.C. § 5001 *et seq.* which were assessed on the volume of distilled spirits produced for that period. Subsequently, plaintiff filed two claims for refunds of the taxes paid for those years presumably because plaintiff determined that it had in fact experienced operating losses during 1976 and 1977 which were not reported when the taxes were paid. One refund claim was filed in January of 1977 to recover taxes paid for the period of July through December in 1976 (the "1976 refund claim") in the amount of $98,289.50. This refund was allowed and returned by the Government's Bureau of Alcohol, Tobacco and Firearms ("BATF") in August of 1977. The plaintiff's second refund claim was filed in June of 1978 to recover taxes paid for the period of January through June in 1977 in the amount of $92,808.45 (the "1977 refund claim"). This claim was disallowed by the Government.

Plaintiff filed this action on April 16, 1980 to recover the 1977 tax refund and to obtain a declaratory judgment from this court that the 1976 tax refund was valid and unassailable. The Government filed its answer on June 30, 1980, in which it averred that the court lacked jurisdiction to issue the declaratory judgment sought by

plaintiff and denied plaintiff's entitlement to the 1977 refund. The action was administratively terminated on September 15, 1980 for the pendency of a grand jury investigation of plaintiff's corporate predecessor. The investigation was concluded and the action was restored to active status on May 26, 1983.

On December 6, 1983, with leave of court, the Government amended its answer to include a counterclaim containing four counts. At oral argument, the Government clarified its counterclaim and informed the court what its statutory bases are, which are paraphrased as follows:

In Count I of the counterclaim, the Government invokes its statutory authority to assess and collect taxes due pursuant to 26 U.S.C. § 6501(c)(1) and (2) and seeks to recover the 1976 refund on the theory that it was erroneously made.

In Count II, the Government avers that the 1976 refund claim was fraudulently made by the plaintiff and constitutes a "false claim" under the False Claims Act, 31 U.S.C. § 3729 et seq. On this count the Government seeks double damages—that is, twice the amount of the 1976 refund—along with a $2,000 fine as authorized by the False Claims Act.

In Count III, the Government alleges that the 1977 refund claim violated the False Claims Act. However, on this count the Government does not seek damages but only the imposition of a $2,000 fine.

Finally, in Count IV, the Government seeks a forfeiture of both the 1976 and 1977 refunds pursuant to the Court of Claims procedure for "Forfeiture of Fraudulent Claims", 28 U.S.C. § 2514.

Before this court are plaintiff's motion for voluntary dismissal of Count I of its complaint and for summary judgment in its favor on Counts I, II, and III of the Government's counterclaim.

## PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL OF COUNT I OF THE COMPLAINT

In Count I of the complaint, plaintiff seeks a declaratory judgment that its 1976 refund, which was allowed by the BATF, is valid and cannot be recovered by the government. Plaintiff now moves for voluntary dismissal of Count I, conceding that this court cannot give a declaratory judgment in a tax case such as this one by reason of 28 U.S.C. § 2201. *Handeland v. C.I.R.*, 519 F.2d 327, 329 (9th Cir.1975). In the interest of judicial economy, the plaintiff's motion will be granted.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE COUNTERCLAIM

Although plaintiff's motion purports to be one for partial summary judgment, it is more accurately a motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted because there has not been a reply to the counterclaim, and no supporting materials have been filed for the court's consideration. *Navios Corporation v. National Maritime Union of America*, 236 F.Supp. 657, 659 (D.Pa.1964), *aff'd* 359 F.2d 853 3rd Cir., *cert. denied* 385 U.S. 900, 87 S.Ct. 205, 17 L.Ed.2d 132 (1966); *Alloy Cast Steel Company v. United Steel Workers of America*, 70 F.R.D. 687, 689 (D.Ohio 1976). Accordingly, the motion will be treated as one under Fed.R.Civ.P. 12(b)(6).

Plaintiff first argues that Count I of the Government's counterclaim must be dismissed because it is time barred. Plaintiff contends that since this part of the counterclaim is a suit for recovery of an erroneous tax refund, the Government's only authority is found in 26 U.S.C. § 7405, titled, "Action for recovery of erroneous refunds," which is governed by the statute of limitation set forth in section 6532(b) of the Internal Revenue Code:

*Suits by United States for recovery of erroneous refunds.*—Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was

induced by fraud or misrepresentation of a material fact.

26 U.S.C. § 6532(b).

If this limitation period is applicable here, as plaintiff contends, then the claim to recover the erroneous refund would have to have been brought no later than August 8, 1982, which is five years after the 1976 refund was made. The counterclaim was deemed to have been filed on December 6, 1983, which is beyond the limitation period of section 6532(b).

In opposition, the Government argues that section 7405 of the Internal Revenue Code is not its exclusive authority for bringing actions to recover erroneous tax refunds. The Government asserts that it may proceed under its statutory authority to assess and collect taxes, which is subject to the limitations set forth in section 6501 of the Code. Since Count I of the counterclaim alleges that the 1976 refund claim was "false and fraudulent," the Government maintains that the claim is governed by section 6501(c), which provides in part:

(1) *False return.*—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

(2) *Willful attempt to evade tax.*—In case of a willful attempt in any manner to defeat or evade tax imposed by this title ... the tax may be assessed, or a proceeding in court for the collection ot such tax may be begun without assessment, at any time.

26 U.S.C. § 6501(c).

Subsection (c) of 6501 is an exception to the general rule, found in subsection (a),

that assessment of tax liability must be made within three years after a return has been filed, and that no suit for collection of the tax liability may be brought within that period if assessment has not been made.

The Government directs my attention to several cases in which section 7405 [1] was construed to be non-exclusive.

In *Warner v. Commissioner,* the Ninth Circuit held that although the Commissioner's suit to recover a refund may have been untimely under the two year limitation applicable to section 7405 by section 6532(b), the action could nonetheless be maintained under the IRS' assessment and collection authority because the three year limitation period of section 6501(a) had not yet expired. 526 F.2d 1, 2 (9th Cir.1975). *Warner* is not dispositive here because the Government is not attempting to invoke section 6501(a) but is trying to employ 6501(c)(1) and (2) which eliminate the limitation period completely. At best, *Warner* shows that when fraud is not alleged by the Government, it can use section 7405 or section 6501 so long as the limitation period in each section has not expired.

*United States v. C & R Investments,* 404 F.2d 314 (10th Cir.1968),[2] held that the Government could avail itself of the deficiency collection proceedings to recover an erroneous refund, which, according to section 6502, must be instituted within six years after a timely assessment is made under section 6501. *C & R Investments* is similar to *Warner* in that there were no allegations of fraud, and, consequently, the court did not reach the issue faced here: whether an action to recover an erroneous

---

**1.** § 7405. Action for recovery of erroneous refunds

(a) Refunds after limitation period.—Any portion of a tax imposed by this title, refund of which is erroneously made, within the meaning of section 6514, may be recovered by civil action brought in the name of the United States.

(b) Refunds otherwise erroneous.—Any portion of a tax imposed by this title which has not been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States.

(c) Interest.—For provisions relating to interest on erroneous refunds, see section 6602.

(d) Periods of limitation.—For periods of limitations on actions under this section, see section 6532(b).

**2.** The case was remanded to the district court to determine whether the deficiency collection proceeding was properly employed. The district court found that it was. 310 F.Supp. 222 (D.Kan.1969), *aff'd* 444 F.2d 765 (10th Cir.1971).

refund induced by fraud, which would be untimely if brought under sections 7405 and 6532, may be brought without regard to time limitations under sections (c)(1) or (2).

In *Ideal Realty Co. v. United States*, the Fourth Circuit relied on *C & R Investments, supra*, and *Warner, supra*, to hold that the "two-year limit on suits to collect erroneous refunds does not affect the right of IRS to use other summary procedure for the collection of interest due on delinquent taxes." 561 F.2d 1123, 1125 (4th Cir.1977). In *Ideal* the IRS was able to use section 6502 because the six year limitation period on collection had not expired; thus, there was no need to consider whether 6501(c) could be used.

The latest in the string of cases relied on by the Government is *Pesch v. Commissioner*, 78 T.C. 100 (1982), where the Tax Court held that the IRS was not limited to section 7405 in recovering an erroneous refund, but could avail itself of the usual deficiency assessment procedures under section 6212. *Id.* at 117–18. The court examined the legislative history of section 610 of the Revenue Act of 1928, which is the predecessor of section 7405. A passage from the Senate Report is worth quoting:

> [Section 610] provides that any erroneous refund ... may be recovered by suit brought in the name of the United States if such suit is begun within two years after the making of the refund. Obviously, if the limitation period on the making of assessments has not expired, the erroneous refund may be recovered by assessment in the ordinary manner.

S.Rept. 960, 70th Cong., 1st Sess. (1928), *reprinted in* 1939–1 C.B. (Part 2) 409,438.

■ This legislative comment and the cases discussed above plainly establish that section 7405 is not the exclusive remedy for the Government to recover an erroneous refund so long as the limitation periods applicable to the other collection procedures have not expired.

Plaintiff argues that these four cases and the legislative comment are irrelevant to the case at bar because they do not deal with the situation where fraud is alleged. This may be true, however, plaintiff has not pointed to any case or comment that addresses the issue here. Thus, it is necessary to consider these cases and the legislative comment to determine whether the reasoning behind them should be extended to the situation where the refund was allegedly obtained by fraudulent means and section 6501(c) is invoked.

Additionally, plaintiff maintains that *Warner* and *C & R Investments* are distinguishable because they involve an original underpayment on the original tax return. The Tax Court thought this distinction to be crucial in the case of *United States v. Young*, 79–2 U.S.T.C. ¶ 9609 (D.Del.1979). In *Young*, the IRS assessed a tax penalty against the taxpayer but, owing to a bookkeeping error, failed to note the amount due on its books. When the taxpayer paid the penalty, the payment appeared as a credit on the IRS' books. The credit was erroneously refunded. After the two year limitation period of section 6532(b) had run, the IRS attempted to recover the refund via the deficiency collection procedure under section 6502(a)(1), relying on *Warner* and *C & R Investments*. The district court ruled that section 6502 could not be invoked because the original deficiency assessment had been satisfied when the taxpayer paid the penalty in full, and that once satisfied, the deficiency assessment could not be revived. On the facts presented, the IRS was left with only one other collection remedy: section 7405. However, since the two year limitation period of section 6532(b) had expired, summary judgment was granted for the taxpayer.

In our case, the plaintiff paid its distilled spirits tax in full. Under the reasoning of *Young*, this would mean that any assessment against the plaintiff had been satisfied, and that the Government could not use the deficiency collection proceedings under section 6501(a) and 6502 to recover the refund. However, the Government is attempting to use sections 6501(c)(1) and (2) which provide that a court proceeding may

be brought without assessment. Therefore, *Young,* is inapposite, except to the extent that it provides additional support for the view that section 7405 is not the exclusive remedy to recover a refund.

■ In view of the expressed legislative intent underlying section 7405's statutory predecessor and the cases discussed above, I see no reason why the additional element of fraud in this case should limit the Government to section 7405 to recover an erroneous refund.

Plaintiff argues that such a construction of the Internal Revenue Code would render section 7405 meaningless, for if an action to recover a fraudulently induced refund may be brought at any time under sections 6501(c)(1) and (2), what purpose is served by the five year limit in section 6532(b)?

The problem with this argument is that it assumes that the scope of section 6532(b) is identical to that of sections 6501(c)(1) and (2). Section 6501(c)(1) refers to a "false or fraudulent return with the intent to evade tax" and section 6501(c)(2) deals with a "willful attempt in any manner to defeat or evade tax." At first glance these sections may appear to completely subsume section 6532(b) pertaining to the situation where a refund is "induced by fraud or misrepresentation of a material fact"; however, they have not been so construed. Section 6532(b) does not require willfulness. *Merlin v. Sanders,* 144 F.Supp. 541, 543 (D.Ga. 1956), *aff'd* 243 F.2d 821 (5th Cir.1957). Thus, it is conceivable that an action by the IRS to recover an erroneous refund induced by a grossly negligent misrepresentation of a material fact will be barred if not brought within the five year limit of section 6532(b) because 6501(c)(1) and (2) would not apply. Hence, permitting the Government to proceed under sections 6501(c)(1) and (2) does not render sections 7405 and 6532(b) meaningless.

Moreover, this construction of these sections is consistent with the Government's broad power to bring legal action to recover money belonging to the treasury. In *United States v. Wurts,* 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1937), the United States Supreme Court, when called upon to interpret the statutory predecessor to section 7405, stated:

> The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid. "No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute, ..." *United States v. Bank of the Metropolis,* 15 Pet. 377, 401 [10 L.Ed. 774]. Section 610 of the 1928 Act, relied upon as barring recovery of this erroneous and unwarranted tax refund, does not grant the Government a new right, but is a limitation of the Government's long-established right to sue for money wrongfully or erroneously paid from the public treasury. Ordinarily, recovery of Government funds, paid by mistake to one having no just right to keep the funds, is not barred by the passage of time.

*Id.* at 416, 58 S.Ct. at 638.

Based on the foregoing, I conclude that the Government may bring an action to recover an erroneous refund under sections 6501(c)(1) and (2). Accordingly, I will deny plaintiff's motion to dismiss Count I of the counterclaim.

■ Plaintiff also moves to dismiss Counts II and III of the Government's counterclaim. As discussed above, these two counts of the counterclaim are based on the False Claims Act, 31 U.S.C. § 3729 *et seq.* According to the Government, the 1976 and 1977 refund claims made by the plaintiff were "false claims" against the United States in violation of the Act. Plaintiff argues that its spirits tax refund claims do not constitute "claims" within the meaning of the Act, and that, even if they are, the Government's action to recover damages and penalties under the Act are untimely.

Section 3729 of the False Claims Act states, in pertinent part:

> A person not a member of an armed force of the United States is liable to the United States Government for a civil pen-

alty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action, if the person—

(1) knowingly presents, or causes to be presented, to an officer or employee of the Government or a member of an armed force a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

31 U.S.C. § 3729.

Section 3730(a) authorizes the Government to bring civil action against one in violation of section 3729 to recover double the amount of the false claim in damages along with a $2,000 penalty.

The same argument advanced by the plaintiff was recently considered by Judge Brotman of this district in *United States v. Lawson*, 522 F.Supp. 746 (D.N.J.1981). There the Government brought a civil action under the False Claims Act against the defendant, a postmaster, for submitting a false affidavit concerning a theft of post office property. Judge Brotman reviewed the case law construing the Act, which was codified at that time as 31 U.S.C. § 231, and concluded that the postmaster's false affidavit did not constitute a "false claim" within the meaning of the Act. Although the False Claims Act was recodified in 1982 as 31 U.S.C. §§ 3729–3731, there were no substantive changes,[3] so Judge Brotman's analysis of § 231 is pertinent here.

The court in *Lawson* noted that some courts have defined "claim" rather broadly for purposes of the Act, such as "actions which have the purpose and effect of causing the Government to pay out money." *United States v. Silver*, 384 F.Supp. 617, 620 (E.D.N.Y.1974), *aff'd*, 515 F.2d 505 (2d Cir.1975). The court drew a distinction, however, "between a situation where the claimant is fraudulently demanding money and one where he is fraudulently seeking a reduction in the amount of money to be paid by him." *Supra*, 522 F.Supp. at 751, quoting *United States v. Howell*, 318 F.2d 162, 165 (9th Cir.1963). According to the regulations of the United States Postal Service, the postmaster is held personally liable for losses sustained by his post office until evidence establishes that he faithfully and conscientiously enforced Postal Service policies and procedures. *Lawson, supra*, 522 F.Supp. at 751, n. 4. Thus, when Lawson submitted a false affidavit regarding the theft (apparently he had conspired to rob the post office with others), he was in fact seeking to reduce his personal liability to the Postal Service. Judge Brotman held that Lawson's affidavit did not constitute a "claim" within the purview of the False Claims Act.

The question of whether a fraudulently induced tax refund is a "claim" within the Act was raised before the Ninth Circuit in *United States ex. rel. Roberts v. Western Pacific R. Co.*, 190 F.2d 243 (9th Cir.1951), *cert. denied* 342 U.S. 906, 72 S.Ct. 298, 96 L.Ed. 678 (1951). There the plaintiff, an individual, sought to recover, on behalf of the United States, taxes due the Government from the defendant. The court pointed out that to treat a fraudulently induced tax refund as within the meaning of the Act would produce an "anomolous result"

---

**3.** The following statement is found in the House Report on the amendments of the False Claims Act and other laws related to money and finance in title 31:

The purpose of the bill is to restate in comprehensive form, without substantive change, certain general and permanent laws related to money and finance and to enact those laws as title 31, United States Code. In the restatement, simple language has been substituted

for awkward and obsolete terms, and superseded, executed, and obsolete laws have been eliminated.

H.Rep. No. 651, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News 1895.

The changes to the False Claims Act when it was re-codified were technical in nature. The word "claim" was not clarified or amended in any manner. *See id.* at 2037–39.

in that a fraudulent refund claim would fall under the Act but a fraudulent withholding of taxes would not. *See id.* at 247. The court refused to adopt this construction in the absence of an indication that the Commissioner of Internal Revenue would consent to having taxpayers bring such suits that would lead to such "incongruous consequences." *Id.* The court affirmed the district court's dismissal of the action because it was not shown that the IRS had authorized the suit.

Although the court in *Western Pacific* did not need to decide whether a fraudulently induced tax refund is a "claim" within the Act, its suggestion that such a construction would produce anomolous results is compelling. The plaintiff would be subjected to double damages and a penalty for submitting a false tax refund claim but would not be liable under the Act for submitting a false tax return initially. These two acts are substantially the same in terms of the fraud perpetrated upon the Government. If anything, the false refund claim poses the lesser danger to the Government because Government presumably has control over the funds of which refund is sought. On the other hand, when a false tax return is filed which understates the tax liability to the Government before any tax payment is made, the Government is frustrated by the fraud in its attempt to collect the money due. If the False Claims Act, which is punitive in nature, is inapplicable to the fraudulent non-payment and withholding of taxes, then how may its application be justified when there is a fraudulent claim for a refund of taxes?

The reasoning of the Ninth Circuit in *Western Pacific* and the definition of "claim" enunciated by Judge Brotman in *Lawson* control here. When the plaintiff filed claims for refunds for the tax years 1976 and 1977, it was not making a fraudulent demand for money but was only seeking to reduce its excise tax liability. Therefore, plaintiff's conduct was not a "claim" within the meaning of the False Claims Act. Accordingly, Counts II and III of the

Government's counterclaim will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## CONCLUSION

For the reasons set forth above, plaintiff's motion for voluntary dismissal of Count I of the complaint is granted, plaintiff's motion to dismiss Count I of the Government's counterclaim is denied, and plaintiff's motion to dismiss Counts II and III of the Government's counterclaim is granted.