**ESTATE OF Beverly W. POWELL,
John E. Lane, III, Executor,
Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 6:00CV0004.**

United States District Court,
W.D. Virginia,
Lynchburg Division.

Feb. 1, 2001.

Joel Bron Miller, Wooten & Hart, P.C., Roanoke, VA, for Plaintiff.

John E. Lane, III, pro se.

Julie C. Dudley, U.S. Atty's Office, Roanoke, VA, Richard G. Jacobus, U.S. Dept. of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

MOON, District Judge.

Plaintiff, John E. Lane, as executor of the estate of Beverly W. Powell, commenced this action by filing a complaint in this Court seeking gift tax refunds. This matter is currently before the Court on cross-motions for summary judgment filed by both parties under Rule 56 of the Federal Rules of Civil Procedure, as well as on the plaintiff's motion to dismiss the defendant's counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Extensive oral argument was held on the parties' motions on December 18, 2000. For the reasons set forth in this Memorandum Opinion, the Court will deny both parties' motions for summary judgment and will also deny the plaintiff's motion to dismiss the defendant's counterclaim.

## I. BACKGROUND [1]

In this tax refund suit, the estate of Beverly W. Powell, appearing by and through its executor, John E. Lane, III, seeks a refund of federal gift taxes allegedly overpaid by the late Mrs. Powell for the 1994 tax year, in the amount of $136,920 plus interest. In addition, the United States has set forth counterclaims though which it seeks to recover allegedly erroneous income tax refunds issued for the 1992 and 1993 tax years. This dispute centers around payments made between

1989 and 1993 from Mrs. Powell's husband, the late Hampton O. Powell, to Jane Hudson–Young. The primary point of contention between the parties is whether the payments were gifts or compensation for services.

Ms. Hudson–Young was employed by the Lane Company from 1956 through 1989, and she worked as the executive secretary to Mr. Powell, the company's chief executive officer, from 1958 until Mr. Powell's retirement in 1984. While Mr. Powell's secretary, Ms. Hudson–Young assisted Mr. Powell with his personal and financial affairs by handling such matters as his personal correspondence, telephone calls to his stockbrokers to place trades at his direction, and record-keeping with respect to his investments, income, and expenses. Ms. Hudson–Young also prepared tax returns for both Mr. and Mrs. Powell. After Mr. Powell's retirement, Ms. Hudson–Young assumed other duties within the Lane Company, but she did not cease to provide assistance to the Powells. Following her own retirement from the Lane Company, Ms. Hudson–Young continued to assist Mr. and Mrs. Powell with personal and financial matters until Mr. Powell's death in 1994. However, it is not contended by either party that Ms. Hudson–Young was a statutory employee of Mr. and Mrs. Lane between 1989 and 1993.

Much of Mr. Powell's wealth derived from his ownership of Lane Company stock, but in the mid–1980s the Lane Company was acquired by Interco and Mr. Powell's Lane Company shares were converted to Interco shares. In 1988, at the

---

**1.** The factual and procedural summary that follows is set forth only to provide background information necessary to give context for the Court's decision. It is not intended to represent findings of fact pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. As explained on the record at oral argument,

the Court will make findings of fact prior to the trial, provided that the parties first submit a stipulation as to the undisputed facts of the case. Such stipulation shall be filed with the Court within 14 days of the date of this Memorandum Opinion.

urging of Ms. Hudson–Young and others, Mr. Powell sold all of his Interco shares for nearly $18 million, and Mrs. Powell also sold her Interco shares for approximately $3.25 million. Subsequent to the Powells' liquidation, Interco went bankrupt. At the end of nearly every year for many years prior to his sale of the Interco stock, Mr. Powell had made gifts of Lane Company stock to Ms. Hudson–Young. After the Interco stock sale, Mr. Powell continued to make year-end payments to Ms. Hudson–Young, but instead made his payments in cash. During the years in question, 1989 through 1993, Mr. Powell made $100,000 payments each December to Ms. Hudson–Young. In addition, in April 1989, Mr. Powell made a payment to Ms. Hudson–Young of Conrail stock worth $98,250; and, in May 1989, Mr. Powell made another $100,000 cash payment to Ms. Hudson–Young. In total, Mr. Powell made payments to Ms. Hudson–Young during the years in question of $798,250. Mr. Powell filed gift tax returns for the payments made to Ms. Hudson–Young during the years in question, and Ms. Hudson–Young did not report the payments as income.

After Mr. Powell died in June 1994, Mrs. Powell hired John Lane to advise her on the administration of Mr. Powell's estate, as well as on her personal tax and estate planning. Subsequently, on Mr. Lane's advice, Mrs. Powell filed amended gift tax returns on behalf of the late Mr. Powell for the years 1989 through 1993, as well as original gift tax returns on her own behalf for those years. Mrs. Powell filed those amended and original returns in order to correct technical defects in the Powells' "gift-splitting" election under 26 C.F.R. § 25.2513–1. Thereafter, Mr. Lane advised Mrs. Powell that she could amend her gift tax returns for the years 1989 through 1993 in order to claim that the gifts made during those years should be recharacter-ized as compensation for personal services, but Mrs. Powell never amended her returns.

Nevertheless, in July 1996, after Mr. Lane became the executor of Mrs. Powell's estate following her death in July 1995, he filed the previously suggested amended gift tax returns and sought a refund in the amount of $136,920. In August 1996, Mr. Lane also filed amended individual income tax returns for the years 1992 and 1993 on behalf of the late Mr. and Mrs. Powell in which he claimed that the payments made to Ms. Hudson–Young during those years were compensation and that a significant portion of that compensation was deductible from the Powells' taxable income for those years. In response to Mr. Lane's 1992–1993 amended income tax return filings on behalf of the Powells, the Internal Revenue Service paid refunds of taxes, penalties, and interest to the estate of Mrs. Powell in the total amount of $21,794.46. However, the Service disallowed the gift tax refunds claimed by Mr. Lane on the Powells' behalf, and this suit followed.

## II. STANDARD OF REVIEW

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). In evaluating a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citations omitted).

When considering a motion to dismiss under Rule 12(b)(6), this Court must consider all facts and reasonable inferences which may be drawn from the face of the plaintiff's complaint to determine whether all of the required elements of the cause of action are present. *Oram v. Dalton,* 927 F.Supp. 180, 184 (E.D.Va.1996) (citing *Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972)). This means that all factual allegations in the plaintiff's complaint must be accepted as true, *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217–18 (4th Cir.1994), and should be construed liberally, *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991). The Court may not dismiss the complaint unless it is apparent that the plaintiff would not be entitled to relief. *Id.*

## III. DISCUSSION

Both parties have filed motions for summary judgment on the plaintiff's gift tax refund claim, and the plaintiffs have also filed a motion to dismiss the defendant's counterclaim. The Court will now take up each of the parties' motions in turn.

*A. Cross–Motions for Summary Judgment*

■ After reviewing the proof submitted by the parties in connection with their respective motions, the Court concludes that this matter is not ripe for decision at the summary judgment stage in favor of either party because both sides have submitted evidence that, if viewed favorably, could lead a reasonable fact-finder to return a verdict in their favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The pivotal issue in the plaintiff's gift tax refund claim is whether the payments made by Mr. Powell to Ms. Hudson–Young are properly classified as gifts or compensation for services. In the semi-

nal case on this issue, *Commissioner of Internal Revenue v. Duberstein,* the Supreme Court declined the Government's request to establish a bright-line test as to the gift-compensation determination and, instead, stated the following:

The course of decision here makes it plain that the statute does not use the term "gift" in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntarily executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. *Old Colony Trust Co. v. Commissioner,* 279 U.S. 716, 730, 49 S.Ct. 499, 504, 73 L.Ed. 918. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, *Bogardus v. Commissioner,* 302 U.S. 34, 41, 58 S.Ct. 61, 65, 82 L.Ed. 32, it is not a gift. And, conversely, "[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." *Robertson v. United States,* 343 U.S. 711, 714, 72 S.Ct. 994, 996, 96 L.Ed. 1237. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," *Commissioner of Internal Revenue v. LoBue,* 351 U.S. 243, 246, 76 S.Ct. 800, 803, 100 L.Ed. 1142; "out of affection, respect, admiration, charity or like impulses." *Robertson v. United States, supra,* 343 U.S. at page 714, 72 S.Ct. at page 996. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." *Bo-*

*gardus v. Commissioner*, 302 U.S. 34, 43, 58 S.Ct. 61, 65, 82 L.Ed. 32. "What controls is the intention with which payment, however voluntary, has been made." *Id.*, 302 U.S. at page 45, 58 S.Ct. at page 66 (dissenting opinion). . . . Moreover, the *Bogardus* case itself makes it plain that the donor's characterization of his action is not determinative—that there must be an objective inquiry as to whether what is called a gift amounts to it in reality. 302 U.S. at page 40, 58 S.Ct. at page 64. It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct in themselves have nothing to do with the matter.

363 U.S. 278, 284–86, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) (footnotes omitted). As this lengthy passage demonstrates, the gift-compensation inquiry is one that "does not lend itself to any more definite statement that would produce a talisman for the solution of concrete cases." *Id.* at 284–85, 80 S.Ct. 1190. Rather, the decision ultimately hinges upon "application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of facts of each case." *Id.* at 289, 80 S.Ct. 1190.

The fact-intensive inquiry set forth in *Duberstein* and its progeny does not, however, foreclose the possibility that summary judgment could be granted if the undisputed facts demonstrate that a payment was either a gift or compensation in such a way that a reasonable fact finder could only arrive at one conclusion. *See Goodwin v. United States*, 67 F.3d 149, 153 (8th Cir.1995) (noting that, despite the fact questions present in the gift-compensation inquiry, "summary judgment may nonetheless be appropriate"). However, this is not a case where a reasonable fact-finder could only come to one conclusion. If all reasonable inferences properly are drawn in the light most favorable to the non-

moving party, *see Shaw*, 13 F.3d at 798, the evidence submitted by the parties in connection with their cross-motions is sufficient to support a verdict for either side. Although the Government has submitted sufficient evidence of Mr. Powell's intent to make gifts to Ms. Hudson–Young, if Mr. Lane's evidence of the services provided by Ms. Hudson–Young to Mr. Lane is viewed in the light most favorable to the plaintiff, a reasonable fact-finder could infer that Mr. Powell intended to compensate Ms. Hudson–Young for her efforts. Conversely, although Mr. Lane's has set forth sufficient evidence that Mr. Powell made the payments in question as compensation for services, if the Government's evidence of Mr. Powell's intention to make gifts is viewed in the light most favorable to the defendant, a reasonable fact-finder could come to the conclusion that Mr. Powell intended to make gifts to Ms. Hudson–Young. Ultimately, the determination of whether the payments in question were gifts or compensation will rest upon the "application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts" presented in this case. *Duberstein*, 363 U.S. at 289, 80 S.Ct. 1190; *see also Poyner v. Commissioner of Revenue*, 301 F.2d 287, 289 (4th Cir.1962) (stating that the "trier of fact must draw from [the basic facts] his inferences as to the 'dominant reason' for the payments—the answer to the question why the payments were made"). Therefore, the most appropriate course of action here is for the Court to deny both parties' motions for summary judgment and for this case to proceed to a trial on the merits.

■ Nevertheless, before moving on to the plaintiff's motion to dismiss, the Court will address an argument made by Mr. Lane that, if accepted, would necessitate an award of summary judgment in his

favor. Specifically, Mr. Lane argues by analogy to section 102(c) of the Internal Revenue Code—which provides that virtually no amount received by an employee from an employer is excludable from the employee's gross income as a gift—that as a matter of law "a detached and disinterested generosity cannot exist where the recipient of such payments performs substantial, continuous, and ongoing financial and investment management services." Assuming that Mr. Lane has put forth evidence sufficient to show that Ms. Hudson–Young's financial and investment services were substantial, continuous, and ongoing, such proof does not establish that payments to Ms. Hudson–Young were compensation as a matter of law. While it may often be the case that payments made to an individual who performs contemporaneous services for the payer are properly treated as compensation rather than gifts, this fact at best establishes a generalization, not a rule of law. *See Goodwin*, 67 F.3d at 152–53 ("Regular, sizable payments made by persons to whom the taxpayer provides services are *customarily* regarded as a form of compensation and *may* therefore be treated as taxable income.") (emphasis added); *Olk v. United States*, 536 F.2d 876, 879 (9th Cir.1976) (stating, in the context of a case involving "tokes" received by a casino employee, that a generalization can be made that "receipts by taxpayers engaged in rendering services contributed by those with whom the taxpayers have some personal or functional contact in the course of the performance of the services are taxable income when in conformity with the practices of the area and easily valued"). Although the fact that a payee may have performed contemporaneous services for the payer might be significant to the gift-compensation determination, it is simply one of "the totality of the facts" that must be considered. *Duberstein*, 363 U.S. at 289. For this court to hold otherwise would be to create a "talisman" test of the sort specifically rejected by the Supreme Court in *Duberstein*. *See id.* at 284–85, 80 S.Ct. 1190. Thus, for all of the foregoing reasons, the Court will deny the summary judgment motions of both parties.

### B. Motion to Dismiss

■ On October 13, 2000, Magistrate Judge Conrad granted the defendant leave to amend its answer in order to state a counterclaim against the plaintiff under Internal Revenue Code section 7405 to recover allegedly erroneous income tax refunds granted to the plaintiff for the 1992 and 1993 tax years. The plaintiff then moved to dismiss the defendant's counterclaim under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. The basis of the plaintiff's argument is that the defendant is not entitled to relief under its counterclaim because the statute of limitations relevant to the recovery of erroneous refunds has lapsed. The relevant statute provides that any suit for the recovery of an erroneous refund must be brought "within two years after the making of such refund, except that such suit may be brought at any time within five years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." I.R.C. § 6532(b). The two-year component of the statute has lapsed, so the Government will be able to recover the allegedly erroneous refunds only if it can take advantage of the five-year component by showing that the refunds were induced by fraud or misrepresentation of material fact. Since the Government does not allege that Mr. Lane committed any fraud in requesting the 1992–1993 refunds, the Court's analysis will be limited to whether the Government should be allowed to proceed with its coun-

terclaim on the basis of a misrepresentation of material fact made by Mr. Lane. For the reasons that follow, the Court holds that the Government has at least stated a claim for recovery of erroneous refunds under section 7405 of the Internal Revenue Code.

However, before taking up the reasons why the Government's counterclaim should be allowed to go forward, the Court first must reject a novel and expansive theory of material misrepresentation that has been argued by the Government in this case. Essentially, it is the Government's position that if the Court concludes that the payments made by Mr. Powell to Ms. Hudson–Young were indeed gifts and not compensation then Mr. Lane would necessarily have made a misrepresentation of material fact that would allow the Government to take advantage of the extended limitations period.[2] The Government bases its argument on language from the *Duberstein* line of cases that describes the gift-compensation determination as presenting an issue of fact. While it is no doubt true that the gift-compensation inquiry hinges upon the fact-finder's determination of the donor's intent in light of the basic facts of the case, *see Duberstein,* 363 U.S. at 289–90, 80 S.Ct. 1190, the factual decision as to the payer's dominant motive does not end the process. Instead, the court must then "decide whether the dominant reason, as found, for the payment is such as to require gift treatment and an escape from taxation under section 102, or income treatment and taxation under section 61." *Poyner,* 301 F.2d at 289–90 (noting further that this final question,

"involving the proper meaning of the statutory term 'gift,' is one of law"). Thus, although *Duberstein* and its progeny make clear that the gift-compensation issue is primarily based in fact, the ultimate question of how a payment should be treated under the relevant statutory provisions remains a legal one. *See id* (describing a three-stage approach to the gift-compensation inquiry whereby (1) the fact-finder first makes findings as to the basic facts, (2) the fact-finder then draws inferences from the basic facts in order to decide the dominant reasons for the payments, and (3) the court finally determines as a matter of law whether the dominant motive found requires gift or compensation treatment under the relevant statutory provisions).

When Mr. Lane filed the amended income tax returns and argued that a refund was due because payments previously treated as gifts should actually be construed as compensation, he was challenging the legal characterization of the payments, not making an assertion of fact. Thus, that the Court might find as a matter of fact that Mr. Powell made his payments out of a "detached and disinterested generosity" and therefore hold that the payments should be treated as gifts under section 102 of the Internal Revenue Code does not necessarily mean that Mr. Lane made a misrepresentation of material fact. Indeed, because Mr. Lane's contention in the amended returns that the payments to Ms. Hudson–Young were compensation and not gifts is not one that " '(1) admits of being adjudged true or false in a way that (2) admits of empirical verification,' " it simply cannot be a misrepresentation of

---

2. The Government also takes the less extreme position that the Court could find that a misrepresentation of material fact had been made if the Court finds that the allegations contained in Mr. Lane's 1992 and 1993 amended returns are "sufficiently at odds with the true facts of this case." However, this stance does not actually soften the Government's argument because, if the Court finds that the payments were gifts, then, under the Government's theory, almost any allegation claiming that the payments were compensation would be "sufficiently at odds with the true facts of the case."

material fact. *United States v. Indianapolis Athletic Club, Inc.*, 785 F.Supp. 1336, 1338 (S.D.Ind.1991) (quoting *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir.1986)). As discussed below, however, this conclusion does not prevent the Government from attempting to prove at trial that Mr. Lane made material misrepresentations in presenting his argument for a change in tax treatment for the payments made to Ms. Hudson–Young by Mr. Powell.

■ As the Fourth Circuit has noted repeatedly, "a complaint should not be . . . dismissed 'unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.' " *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir.1982) (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969)). Because it appears possible that the Government might be able to prove that Mr. Lane made one or more material misrepresentations in the amended returns and the attachments thereto, this Court must deny Mr. Lane's motion to dismiss the Government's counterclaim. For example, the Government might be able to prove that Mr. Lane made a misrepresentation of material fact when he did not mention in his amended returns that Mr. Powell had characterized his payments to Ms. Hudson–Young as gifts and did not attach copies of Mr. Powell's previously filed gift tax returns. The donor's characterization of a payment, while not dispositive, is certainly a fact that is material to the gift-compensation determination. *See Duberstein*, 363

U.S. at 285–86, 80 S.Ct. 1190. Furthermore, the possible significance of Mr. Lane's omission of any statement regarding Mr. Powell's characterization is compounded by the following statements that Mr. Lane did chose to include in his attachment to the amended returns: "These transfers were improperly characterized by Ms. Hudson–Young as gifts. Such characterization was to the tax benefit of Ms. Hudson–Young and to the detriment of the Powell's [sic]." While these statements might otherwise constitute benign argument, in light of the fact that Mr. Lane neglected to mention Mr. Powell's own characterization of the payments, the statements could provide support for an argument by the Government that Mr. Lane misrepresented a material fact.[3] Similarly, Mr. Lane also failed to mention that Ms. Hudson–Young was not a statutory employee of Mr. Lane, while at the same time citing repeatedly to legal authority pertaining to the rule that transfers from employers to statutory employees cannot generally be considered gifts. While Mr. Lane correctly argues that these citations are accurate statements of the law, he is wrong when he argues that the Service could not have been mislead by them. The provisions set forth in Mr. Lane's attachment to the amended returns that relate to employee gifts are only applicable to Ms. Hudson–Young by analogy. Yet, the citations were presented by Mr. Lane in the attachment without qualification and under the heading "Applicable Citations." Therefore, it is possible that these statements of law, together with Mr.

---

3. On this issue, Mr. Lane also argues that his failure to mention the prior gift tax returns or Mr. Powell's statements that the payments were gifts cannot be a misrepresentation as a matter of law because the Service was on notice of the prior inconsistent treatment of the payments by virtue of the fact that the gift tax returns were already on file when the

amended income tax returns were submitted. Mr. Lane cites no authority for his position, and the Court will not adopt his view, although the Court notes that the existence of the gift tax returns in the Service's files might be evidence which could be used to evaluate Mr. Lane's state of mind when he made any alleged misrepresentations.

Lane's omission of the fact that Ms. Hudson–Young was not a statutory employee of Mr. Powell, could be used by the Government to establish a misrepresentation of material fact.

Assuming that Mr. Lane's statements and omissions in the amended returns could constitute misrepresentations of material fact, the next issue that must be decided is what state of mind the Government would have to prove in order to avail itself of the extended limitations period offered by section 6532. On this issue, there is a split of authority between courts that require an intentional or knowing misrepresentation and courts that require the misrepresentation to be the product of at least negligence. *Compare United States v. Northern Trust Co.*, 93 F.Supp.2d 903, 909 (N.D.Ill.2000) (requiring that the misrepresentation be knowing or intentional), *with Black Prince Distillery, Inc. v. United States*, 586 F.Supp. 1169, 1174 (D.N.J. 1984) (stating that section 6532 "does not require willfulness" and that the five-year limitations period could be "induced by a grossly negligent misrepresentation"). Mr. Lane has argued that willfulness is required, while the Government has contended that a negligent, or indeed even an innocent, misrepresentation should suffice.

■ Recognizing that there appears to be no clear authority on this issue within the Fourth Circuit, the Court now holds that, in order to take advantage of the five-year limitations period offered by section 6532, the Government will have to prove that Mr. Lane made intentional or knowing misrepresentations of material fact in connection with the amended returns. *See, e.g., Northern Trust*, 93 F.Supp.2d at 909. Under section 6532, the Government may bring suit to recover an erroneous refund "if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." I.R.C.

§ 6532(b). Because the term "misrepresentation of a material fact" is not defined by the statute, when interpreting section 6532, the Court should give the words " 'their common and ordinary meaning.' " *National Coalition for Students With Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 288 (4th Cir.1998) (quoting *Alexander S. v. Boyd*, 113 F.3d 1373, 1383 (4th Cir.1997)). In determining the common or ordinary meaning of a word, it is customary for courts to look to the word's dictionary definition. *See id.* at 289 ("We customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning."). According to *Webster's*, to "misrepresent" is to "give a false or misleading representation of usu[ally] with an intent to deceive or be unfair." *Merriam–Webster's Collegiate Dictionary* 744 (10th ed.1994). Similarly, *Black's* defines "misrepresentation" as "[t]he act of making a false or misleading statement about something, usu[ally] with the intent to deceive." *Black's Law Dictionary* 1016 (7th ed.1999). Therefore, while there is certainly authority to the contrary, *see, e.g., Black Prince*, 586 F.Supp. at 1174, the better view of the "misrepresentation of a material fact" language in section 6532 seems to be that it requires a showing of knowledge or intent to deceive. This result conforms with other cases that have construed the term "misrepresentation" in different tax contexts. *See, e.g., H Graphics/Access, L.P. v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 3148, 1992 WL 129882 (1992) (stating, in the context of construing a provision of the Internal Revenue Code dealing with settlement agreements, that the term "misrepresentation" requires a "deliberate intent to deceive or mislead similar to that required to prove fraud"); *Brinkman v. Commissioner of Internal Revenue*, 57 T.C.M. (CCH) 331 (1989) (noting, in the context of construing a provi-

sion of the Internal Revenue Code dealing with closing agreements, that "misrepresentation" means "an untrue statement of fact, which, by implication, was intentional"). Furthermore, the result conforms with Fourth Circuit authority which appears to equate the term "misrepresentation of a material fact" with "fraud" in the context of section 6532. *See Ideal Realty Co. v. United States*, 561 F.2d 1123, 1124 (4th Cir.1977) (stating that the issue in the case was "whether a civil suit to recover an erroneous refund pursuant to 26 U.S.C. Section 7405, *which in the absence of fraud, must be begun within two years after the refund according to 26 U.S.C. s 6532(b)*, is the only way that the government can collect [erroneously refunded] taxes") (emphasis added) (footnotes omitted). Therefore, in order to invoke the five-year statute of limitations under section 6532, the Government will have to prove at trial that Mr. Lane made intentional or knowing misrepresentations of material fact in connection with the amended returns.[4]

The Court will conclude by addressing Mr. Lane's final argument that the Government cannot invoke the five-year statute of limitations period for misrepresentations of a material fact because its counterclaims do not meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be states with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). In cases such as this one, the "9(b) pleading burden should not be onerous." *Northern Trust*, 93 F.Supp.2d at 910 n. 9. In a misrepresentation case, Rule 9(b) merely requires that the pleading "state ... 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992) (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990)). Nevertheless, "although 9(b) allows that motive and intent may be pleaded generally, the pleading must include allegations from which it is possible to infer the requisite level of scienter." *Northern Trust*, 93 F.Supp.2d at 910 n. 9.

The Government's amended answer and counterclaim describes the amended 1992 and 1993 income tax returns submitted by Mr. Lane and alleges that refunds were wrongly paid for those years because "the plaintiff erroneously recharacterized the gifts made by Hampton O. Powell to Jane Hudson–Young during the years 1992 and 1993 as payments of compensation to Ms. Hudson–Young." Mr. Lane argues that the counterclaim lacks the requisite particularity under Rule 9(b) because the Government "does not even allege a negligent representation, never mind gross negligence or an intent to mislead or fraud." In granting the Government's motion for leave to amend its answer in order to set forth its counterclaims, Magistrate

---

4. While there is some merit to the Government's argument that a suit under section 7405 to recover an erroneous refund is tantamount to action in restitution, which can be triggered by negligent or even innocent misrepresentation, the fact that restitution actions in equity can be brought on the basis of innocent and negligent misrepresentations does not require that the five-year component of section 6532 be triggered by such misrepresentations. Under section 6532, the government may still achieve a restitution-type recovery of an erroneous refund that was granted as a result of an innocent or negligent misrepresentation—it simply must bring such a suit within two years.

Judge Conrad had this to say about Mr. Lane's 9(b) argument:

> Defendant's amended answer is not futile due to a lack of specificity. The allegations in the counterclaim mention the years at issue, the parties involved, and the alleged mischaracterization of gifts as compensation. Plaintiff does not argue that he does not know what the alleged misstatement of material fact at issue is, and therefore plaintiff cannot claim that he is prejudiced by any lack of specificity in the amended counterclaim.

*Powell v. United States*, 2000 WL 1727707, at *3 (W.D.Va. Oct.13, 2000). The Court agrees with the Magistrate Judge's assessment. The Government's amended answer and counterclaim contain "allegations from which it is possible to infer the requisite level of scienter." *Northern Trust*, 93 F.Supp.2d at 910 n. 9. However, in an abundance of caution and pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the Court will grant the Government's request to amend its amended answer and counterclaim by adding the following allegation:

> Upon filing the 1992 and 1993 income tax refund claims described in paragraph 25 herein, which asserted that Mr. Powell's payments to Ms. Hudson–Young should be recharacterized as compensation, plaintiff made one or more misrepresentations of material fact within the meaning of § 6532(b) of the Internal Revenue Code.

As amended, the Government's complaint sets forth a general allegation of intent sufficient under Rule 9(b). Therefore, for all of the foregoing reasons, Mr. Lane's motion to dismiss the Government's counterclaim will be denied.

## IV. CONCLUSION

As stated above, the Court will deny both parties' motions for summary judg-ment, and will deny the plaintiff's motion to dismiss the defendant's counterclaim. The parties are instructed to submit a stipulation containing all undisputed facts to the Court within fourteen days of the entry of this Memorandum Opinion.

The Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion and the attached Order to all counsel of record.

## ORDER

For the reasons stated in the attached Memorandum Opinion, both the plaintiff's and defendant's motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure shall be, and hereby are, DENIED. In addition, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the Court will GRANT the Government's request for leave to amend its amended answer and counterclaim by adding the following language:

> Upon filing the 1992 and 1993 income tax refund claims described in paragraph 25 herein, which asserted that Mr. Powell's payments to Ms. Hudson–Young should be recharacterized as compensation, plaintiff made one or more misrepresentations of material fact within the meaning of § 6532(b) of the Internal Revenue Code.

Lastly, the plaintiff's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the defendant's counterclaim shall be, and hereby is, DENIED.

The parties are instructed to submit a stipulation containing all undisputed facts to the Court within fourteen (14) days of the entry of this Order and attached Memorandum Opinion.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a copy of this Order and at-

tached Memorandum Opinion to all counsel of record.